**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ASSOCIATED MORTGAGE BANKERS, INC.**,  )<br>2395 Ocean Avenue, Suite 5,  )<br>Ronkonkoma, New York 11779, on behalf of itself  )<br>and a class of similarly-situated mortgage lenders,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>**JULIAN CASTRO**, in his official capacity as  )<br>Secretary of the U.S. Department of Housing  )<br>And Urban Development,  )<br>451 7th Street, S.W.,  )<br>Washington, D.C. 20410, and  )<br>)<br>**U.S. DEPARTMENT OF HOUSING AND**  )<br>**URBAN DEVELOPMENT**,  )<br>451 7th Street, S.W.,  )<br>Washington, D.C. 20410,  )<br>)<br>Defendants.  )<br>)  | Case No. 17-CV-_____ |

**COMPLAINT**

**INTRODUCTION**

If someone wanted to understand the public's frustration with the federal government, he or she need only look to the Department of Housing and Urban Development's ("HUD") abysmal conduct in disposing of the collateral for a loan originated by Plaintiff Associated Mortgage Bankers, Inc. ("AMB"). Briefly, HUD took a property valued at $550,000 and improperly sold it as part of a bulk sale of defaulted notes for the alleged amount of $360,531.24, in short, for approximately $190,000 *less* than the property was worth. Because AMB had agreed to indemnify HUD for any losses suffered in connection with the liquidation of this particular loan, HUD's misconduct in failing properly to liquidate the collateral means that AMB

must suffer the consequences -- to wit, it must pay HUD's losses in the amount of $174,918.20 plus interest accruing at the rate of 5% from February 25, 2015.

AMB filed an administrative appeal objecting to HUD's outrageous conduct. While recognizing that HUD "admitted that the [] Loan should never have been included in the [Single Family Loan Sale] Program" and that selling the Loan in this manner "was a direct violation of HUD's own [Participating Servicer Agreement]" with the servicer, the Administrative Law Judge excused such conduct on the part of HUD and left AMB holding the bag for all of the losses. To paraphrase Oscar Wilde's barb about Queen Victoria's prisoners: If this is the way the government treats its citizens, it doesn't deserve to have any.

As it turns out, HUD has treated a number of other lenders in a similar manner. In order to stop this misconduct -- that is, the practice of giving away the collateral for loans with indemnification agreements for the price of the notes as part of a bulk sale -- AMB, on behalf of itself and a class of similarly-situated lenders, brings this class action seeking declaratory and injunctive relief as well as restitution and disgorgement against defendants Julian Castro, in his official capacity as Secretary of the United States Department of Housing and Urban Development, and the United States Department of Housing and Urban Development, for violations of the Administrative Procedure Act, 5 U.S.C. §§ 551, *et. seq.* ("APA"), as well as for common law breach of the covenant of good faith and fair dealing.

**SPECIFIC ALLEGATIONS**

1. Plaintiff AMB on behalf of itself and a class of similarly situated mortgage lenders brings this action against Defendants Julian Castro, in his official capacity as Secretary of the United States Department of Housing and Urban Development, and the United States Department of Housing and Urban Development (Secretary Castro and the Department of Housing and Urban

Development are referred to collectively as "HUD"), for violations of the APA. HUD violated the APA by taking final agency action, in the form of a final decision by the Office of Hearings and Appeals that is arbitrary, capricious, and inconsistent with law. Further, AMB also asserts claims against HUD for breach of the covenant of good faith and fair dealing.

## PARTIES

2. AMB is incorporated under the laws of New York, with its principal place of business in Ronkonkoma, New York. AMB originates mortgage loans, including mortgages that were eligible for insurance under the federal FHA-insurance program administered by HUD. AMB is and was at all times relevant to these allegations an FHA-approved mortgagee and subject to regulation by HUD.

3. Julian Castro is the Secretary of HUD, and he is named only in his official capacity.

4. HUD is an agency of the United States government with its headquarters at 451 7th Street, S.W., Washington, D.C. 20410.

5. The Federal Housing Administration ("FHA") was created by Congress in 1934. In 1965, the FHA became a part of HUD. The FHA became a part of the HUD's Office of Housing in 1965. In general, the FHA provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories. According to HUD's website, the "FHA insures mortgages on single family and multifamily homes including manufactured homes and hospitals. It is the largest insurer of mortgages in the world, insuring over 34 million properties since its inception in 1934." *See* https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory. Also, according to the website:

> FHA is the only government agency that operates entirely from its self-generated income and costs the taxpayers nothing. The proceeds from the mortgage insurance paid by the homeowners are captured in an account that is used to operate the program entirely. FHA provides a huge economic stimulation to the

country in the form of home and community development, which trickles down to local communities in the form of jobs, building suppliers, tax bases, schools, and other forms of revenue.

*Id.*

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides district courts with original jurisdiction over all civil actions arising under the laws of the United States.

7. Venue is proper in this Court under 28 U.S.C. § 1391, which provides that a civil action in which a defendant is an officer or agency of the United States may be brought in any judicial district in which a defendant resides.

## STATUTORY, REGULATORY AND FACTUAL BACKGROUND

8. Pursuant to the Administrative Procedure Act ("APA"), federal district courts may set aside and hold unlawful those agency actions, findings and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Further, federal courts may set aside and hold unlawful those agency actions, findings, and conclusions that are "in excess of statutory jurisdiction, authority, limitations, or short of statutory right."  5 U.S.C. § 706(2)(c).  Federal courts may also review agency action that causes harm to any party.  5 U.S.C. § 702.

9. This action arises out of an indemnification agreement entered into by AMB in 2012 in connection with a HUD audit of an individual mortgage loan, FHA Case No. 374-5838647 (the "Loan").  A copy of the Indemnification Agreement is attached hereto as Exhibit A.

10. Unbeknownst to AMB, HUD sold the note that was secured by the collateral for the Loan through HUD's Single Family Loan Sale ("SFLS") program.  The SFLS program is part of

4

HUD's broader Accelerated Claims Disposition ("ACD") program. The specific bulk loan sale was Pool 105 of SFLS 2013-2, which was a pool of 2,278 notes. The Pool was sold to the highest bidder *for the entire pool*, which in the case of the Loan resulted in a sales price that was only 66% of the collateral's appraised value. The successful bidder was identified as "SRMOF II 2012-1 Trust."

11. The SFLS Program was designed to, among other things, reduce HUD's time lines for carrying costs of properties and limit HUD's losses. But here, HUD had an indemnification agreement from AMB on the Loan; accordingly, HUD was not at a risk of loss on the Loan because of any delayed or extended time lines.

12. Further, as HUD explains on its website, "[t]he loans sold contain specified representations and warranties and may be sold with post-sale restrictions and/or reporting requirements." *See* HUD Website at:  http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/comp/asset/sfam/sfls. Thus, by its very structure, the SFLS Program will not result in the highest value for the property because: 1) the only persons or entities that can bid on the "asset" are those who register with HUD and are prepared to purchase a large number of assets; 2) purchasers interested in an individual property, in this case, the property that is the collateral for the Loan, are excluded from purchasing; and 3) the program includes post-sale restrictions on the property which include allowing the original borrower to remain in residence while all loss mitigation options continue to be explored.[1] Each of these factors results

---

[1] *See* Exhibit B, hereto (FHA Single Family Loan Sales 2013-2 (SFLS 2013-2) Qualification Statement). As the Qualification Statement makes clear, the qualified bidder is required to have a net worth in excess of $5 million, among other requirements. *Id.* at 3. In addition, as with the case of the note for the Loan, the purchaser is required to service the associated mortgage in accordance with FHA requirements and the servicing must be done by an approved servicer. *Id.* at 7. *See also* 24 C.F.R. § 291.307(a) ("All mortgage loans must be serviced by HUD-approved servicing mortgagees for the remaining life of the mortgage loans. A purchaser that is not a

in a reduction in the sales price which is why HUD does not permit its servicers to include loans in the SFLS Program where there is an indemnification agreement in place. *See* Single Family Loan Sale 2013-2, Participating Servicer Agreement, Exhibit C, at 9 (defining "Eligible Mortgage Loan" as *inter alia*, "not subject to an Indemnification Agreement"); *id.* at 16 ("HUD will not issue an SFLS Claim Identification Date for any mortgage loans for which Indemnification Agreements are identified on HUD's system of records").

13. HUD's SFLS has come under increased scrutiny because of the adverse effect of such sales on the communities. *See, e.g., Vulture Capital Hits Home – How HUD is Helping Wall Street and Hurting Our Communities*, The Center for Popular Democracy, Sept. 2014, available at: http://homesforall.org/wp-content/uploads/2014/09/HUD.DASP_.RTC_.v15.pdf.

14. In order to sell notes as part of a bulk sale, HUD requires the servicer of the loans to execute a Participating Servicer Agreement.  For SFLS 2013-2, the servicer, JPMorgan Chase Bank, N.A., was required by the Participating Servicer Agreement to, among other things, submit an initial and updated "SFLS Claim Submission Report" to HUD after which HUD would advise [Servicer] of those "Eligible Mortgage Loans" which [Servicer] could include in the pool and subsequently file a claim for insurance.  Participating Servicer Agreement at 16, Exhibit C, hereto.

15. Importantly, the Participating Servicer Agreement defines "Eligible Mortgage Loans" as, *inter alia,* a "Mortgage Loan" [that] is not subject to an Indemnification Agreement, or other settlement agreement setting forth specific obligations with respect to Mortgage Loan unless such obligations have been fully satisfied." *Id.* at 9.

---

HUD-approved servicing mortgagee must retain a HUD-approved servicing mortgagee to service the mortgage loans.").

16. HUD was solely responsible for ensuring that loans subject to indemnification agreements, including the Loan, were not included in the SFLS. The Participating Servicer Agreement clearly states:

> HUD's identification process will be used only to identify mortgage loans submitted as potential SFLS Claims by Participating Servicers and not to screen mortgage loans for eligibility, ***with the exception of mortgage loans subject to an Indemnification Agreement.***

*Id.* at 16 (emphasis added). HUD completely and utterly failed to screen the list of Eligible Mortgage Loans for those loans subject to Indemnification Agreements as evidenced by the fact that the Loan was listed on HUD's FHA System as subject to an indemnification agreement. *See* Exhibit D.

17. AMB's Indemnification Agreement for the Loan was executed on December 10, 2012; accordingly, the Loan was not an "Eligible Mortgage Loan" for SFLS 2013-2.

18. HUD's failure to properly screen the mortgage loans that the servicer has included in the bulk note sale is inexcusable and resulted in serious damage to AMB and the putative class. Among other things, by selling the Loan, as well as other loans subject to indemnification agreements, HUD breached the terms of the indemnification agreements it executed with lenders. The indemnification agreements contemplate that HUD will exercise reasonable business judgment in liquidating the collateral, which typically involves the individualized sale of the underlying collateral.

19. In addition, by selling the note at a discount, HUD is forfeiting the right to obtain recovery of any losses that must now be borne by the lender if there was an indemnification agreement in place.

20. HUD's failure to follow its own procedures with regard to the SFLS unnecessarily increases the losses suffered by FHA. Among other things, HUD restricts bidders who may

participate in the SFLS by imposing minimum net-worth requirements, and by imposing other requirements such as approval to service FHA-insured mortgages and allowing the borrowers to remain in the property for a period of time while loss mitigation options are explored.  Further, the bidder must purchase all of the notes in the designated pool.  For SFLS 2013-2, there were 2,278 defaulted notes included in Pool 105.

21. HUD requires the participating servicer to obtain a broker price opinion ("BPO") for the collateral in advance of the actual sale.  For the Loan, prior to the sale, the servicer identified the value as $550,000, as of April 21, 2013.

22. HUD requires bidders to submit bids expressed as a percentage of the unpaid principal balance ("UPB") to be paid for each Mortgage Loan.  According to HUD, the purported sales price is the result of multiplying the UPB for each mortgage loan in the Pool by the bid percentage.

23. While bidders are required to submit bids for each note in the pool, the individual loan is not sold to the highest bidder; rather, the entire pool is sold to the highest bidder for the entire pool.

24. Pursuant to the terms of the Indemnification Agreement, HUD was required to sell the collateral, *i.e.,* the home, and then seek recovery for its losses, if any, from AMB.  Instead, HUD sold the note for the Loan as part of a pool in a process that necessarily reduced the amount of HUD's recovery by excluding potential bidders, including individuals interested in purchasing a home, as well as persons and entities who did not meet HUD's minimum net worth requirement or did not have the capacity to service FHA-insured loans.

25. According to HUD, it sold the note for the Loan on September 19, 2013, for $360,531.24.

26. AMB obtained an valuation of the property which placed the value at $530,100 as of September 13, 2013, which is approximately one month after HUD claims it received only $360,531.24 for the sale of the note for the Loan.

27. In spite of selling the note for the Loan in September 2013, the first notification AMB received regarding the purportedly due amount under the Indemnification Agreement was on July 28, 2014, when AMB received a Notice of Intent to Collect by Treasury Offset, wherein HUD stated that it incurred losses in the amount of $160,448.62.

28. In response to AMB's objection to the sale of the note for the Loan as part of the SFLS, Brian Dillon, the Director of HUD's Asset Recovery Division, acknowledged HUD's mistake: "***HUD acknowledges that the indemnified loan was erroneously included in the Single Family Loan Sale (SFLS) Program.***"  *See* Exhibit E, hereto (emphasis added).  While Mr. Dillon goes on to state that it was "HUD's position that this event did not impact on the legal enforceability of the Indemnification Agreement," he proffers no basis for such an assertion, nor does he even attempt to explain how a property valued at $550,000 was sold for only $360,531.24, or for only 66% of its value.

29. On December 17, 2014, AMB filed a timely appeal with HUD's Office of Hearings and Appeals.

30. On December 17, 2014, the Administrative Judge assigned to the case issued a stay pending a final decision on AMB's appeal.

31. After an administrative process that lasted almost exactly two years, the HUD Administrative Judge issued her Decision and Order (the "Decision") on December 16, 2016, finding the debt to be legally enforceable against AMB and vacating the prior Stay of Referral. A copy of the Decision is attached as Exhibit F, hereto.

32. In her decision, the Administrative Judge incorrectly determined that the Indemnification Agreement provided HUD unfettered discretion to ignore the plain language of the Agreement regarding the sale of the property to a third party. Decision at 5. The Administrative Judge did recognize, however, that had HUD sold the property to a third party, "the market value of the property is a relevant consideration." *Id.* The Administrative Judge's reasoning is fundamentally flawed because, among other things, she ignored the plain language of the Indemnification Agreement and she repeatedly confuses the value of the debt, *i.e.*, the note, with the value of the collateral, *i.e.*, the house. *See, e.g.*, Decision at 6-7 (citing the Secretary's Second Supplemental Statement for the proposition that the "loans" sold through the SFLS Program "are competitively bid, and thus represent the loan's current market value"). Because HUD is selling the notes, and not the underlying collateral that secures repayment of the note, bidders have no incentive to bid in an amount in excess of the outstanding debt.

33. In addition, the Administrative Judge improperly rejected the other arguments presented by AMB including the fact that: 1) HUD never intended to sell the note for the Loan in the SFLS, *see, e.g.,* Decision at 8, n.11 ("Including [the Loan in the SFLS] was a direct violation of HUD's own PSA."); 2) HUD completely abdicated its responsibilities by not screening the list of loans to determine the existence of an indemnification agreement despite the fact that it recognized the need to perform such screening; and 3) the structure of the SFLS necessarily results in lower prices paid for notes, thereby unfairly increasing HUD's losses on loans with indemnification agreements.

34. The Administrative Judge also made the unsupported finding that there is no "statute, regulation, or published HUD guidance that speaks to the issues raised by [AMB]," yet, there was no statement by HUD to support such a conclusion. Rather, HUD repeatedly refused to

10

disclose the existence of any internal guidance regarding its screening process or even the basis for its inclusion of the screening provision in its Participating Servicer Agreements.

35. HUD's callous disregard of its obligations caused financial injury to AMB, as well as to other lenders, and the agency's conduct was arbitrary, capricious and contrary to law.

36. The Decision is a final agency action, as stated by regulation at 24 C.F.R. § 17.73.

## CLASS ALLEGATIONS

37. AMB seeks to represent a class of mortgage lenders (the "Lender Class") who executed indemnification agreements on loans that were improperly included in the ACD program either through the SFLS or some other accelerated disposition program.

38. HUD's complete failure to properly screen the loans identified by servicers to remove those loans with indemnification agreements was widespread.

39. On August 8, 2014, the HUD Office of the Inspector General ("HUD IG"), issued a Report of its audit of HUD's indemnification recovery process for single-family loans. *See* Exhibit G, hereto. The HUD IG determined that there were "243 loans that were part of the ACD program from January 1, 2004, to February 21, 2014, that had indemnification agreements; however, HUD did not evaluate any of these loans for billing." HUD IG Report at 5. According to the Report, the losses on those loans exceeded $22 million.

40. The HUD IG Report specifically identifies the Loan, FHA Case No. 374-5838647, as one of the loans for which HUD had not "billed" the lender because the loan was sold through the ACD program. HUD IG Report at 29.

41. The fact that the HUD IG conducted the audit and admonished HUD's Office of Finance and Budget for its failure to seek recovery in those situations where HUD sold the loan through

an SFLS explains why HUD did not seek recovery from AMB until July 2014 when, in fact, the Agency sold the loan back on September 9, 2013.

42.  On information and belief, the Lender Class received a Notice of Intent to Collect by Treasury Offset identical in form to the one sent to AMB.  HUD did not alert the Lender Class that HUD breached its own policies regarding the disposition of the loans.  In fact, the Lender Class has no way of uncovering HUD's negligence and/or willful disregard of its own policies unless they individually undertook their own substantial investigation.

43.  The members of the Lender Class have been injured to the same extent as AMB, to wit, the amount of purported debt each class member purportedly owes HUD has been significantly increased because HUD violated its own procedures by including loans in the ACD that, in fact were subject to indemnification agreements.

44.  HUD's conduct towards the Lender Class was identical, and each member of the Lender Class was harmed in an identical fashion; thus, this case is amendable to class treatment pursuant to Rule 23, Fed. R. Civ. P.

45.  Pursuant to Rules 23 (a) and 23(b)(1)-(3), AMB seeks certification of the following class:

> All mortgage lenders who executed an indemnification agreement with HUD in connection with one or more loans and where the loans were subsequently included in an SFLS or other ACD at any time prior to final judgment in this action.

46.  AMB will adequately represent the interest of the Lender Class.

## COUNT I

**Violation of the Administrative Procedure Act (5 U.S.C. § 706)**

47.  AMB incorporates the allegations stated in paragraphs 1 through 46 as if fully stated herein.

48. The Administrative Judge's Decision is a final agency action.

49. The Decision is arbitrary, capricious, and contrary to law because HUD acted negligently and/or with a complete lack of diligence by not excluding the Loan from the SFLS.

50. The decision is arbitrary, capricious, and contrary to law because it fails to acknowledge that HUD completely disregarded its own policies and procedures by allowing loans with indemnification agreements to be included in the SFLS.

51. HUD's actions have caused and will continue to cause irreparable harm to AMB and other mortgage lenders who have executed indemnification agreements with HUD.

## COUNT II

### Breach of the Covenant of Good Faith and Fair Dealing

52. AMB incorporates the allegations stated in paragraphs 1 through 46 as if fully stated herein.

53. The indemnification agreement is a contract between HUD and the lender.

54. There is a duty of good faith and fair dealing implied in every contract.  It is not necessary to breach an express contractual provision in order to breach the implied duty of good faith and fair dealing.

55. A party to a contract—including the government—must do everything that the contract presupposes should be done to accomplish the contract's purpose so as to not destroy the reasonable expectations of the other party regarding the fruits of the contract.

56. HUD breached its implied duty through a lack of diligence and/or negligence by failing to screen the list of loans provided by the servicers to remove those loans with an indemnification agreement.

**PRAYER FOR RELIEF**

WHEREFORE, AMB respectfully requests that this Court:

1. Set aside the Decision, and declare that the Decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of 5 U.S.C. § 706(2)(A);

2. Declare HUD to be in breach of the Indemnification Agreement that was executed in connection with the Loan, FHA Case No. 374-5838647;

3. Enjoin HUD from issuing any administrative offset or referring the debt to Treasury for collection;

4. Certify this matter as a class action;

5. Issue a preliminary injunction restraining HUD, its officers, employees, agents, or servants from taking any actions against AMB, or the Lender Class, with respect to loans where there was an existing indemnification agreement in place and HUD subsequently included the loan in an SFLS;

6. Award AMB its attorney's fees and expenses incurred in this action; and

7. Grant such other relief as the Court deems just and proper.

Dated: January 12, 2017
Washington, DC

/s/ David M. Souders
David M. Souders (Bar No. 441491)
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel: (202) 628-2000
Fax: (202) 628-2011
Email: souders@thewbkfirm.com

*Counsel for Plaintiff and the class of similarly situated mortgage lenders*