UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATED MORTGAGE BANKERS, INC., <br><br>       Plaintiffs, <br>v. <br><br>BEN CARSON, in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,[1] <br><br>and <br><br>U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br><br>       Defendants. | Civil Action No. 17-cv-00075 (ESH) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Of Counsel:

Batina Wills-Washington
Office of General Counsel
U.S. Department of Housing and
Urban Development
batina.wills-washington@hud.gov

CHAD A. READLER
Acting Assistant Attorney General
RUTH A. HARVEY
Director
J. TAYLOR MCCONKIE
Assistant Director
KEVIN P. VANLANDINGHAM
Trial Attorney
NY Reg. No. 4741799
U.S. Department of Justice, Civil Division
P.O. Box 875, Ben Franklin Station
Washington, D.C.  20044-0875
Telephone: (202) 307-1134
Facsimile: (202) 514-9163
kevin.p.vanlandingham@usdoj.gov

ATTORNEYS FOR THE DEFENDANTS

---

[1] Under Federal Rule of Civil Procedure 25(d), Ben Carson, the current Secretary of Housing and Urban Development, is automatically substituted as the named defendant for Julian Castro, the former Secretary.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................... iii

**EXECUTIVE SUMMARY** ....................................................................................................... 1

**BACKGROUND** ........................................................................................................................ 3

I.      AMB Originated a Non-Compliant Mortgage ................................................................ 3

II.     AMB Agreed to Indemnify HUD for the Non-Compliant Mortgage ............................... 4

III.    AMB Refused to Honor its Agreement to Indemnify HUD .............................................. 5

IV.    The Participating Servicer Agreement with Chase Bank Provides
No Third Party Rights to AMB ........................................................................................ 6

**ARGUMENT** .............................................................................................................................. 6

I.      Plaintiff's APA Claim (Count I) Must Be Dismissed ...................................................... 6

       A.    Congress Has Not Waived Sovereign Immunity to Plaintiff's APA Claim
Because the Tucker Act Forbids the Requested Relief ........................................... 6

       B.    Plaintiff Cannot State a Claim under the APA Because It Has an
Adequate Alternative Remedy ................................................................................ 9

II.     Plaintiff's Claim For Breach of the Implied Covenant of Good Faith and Fair Dealing
(Count II) Must be Dismissed ....................................................................................... 11

       A.    Plaintiff Has Not Alleged, and Cannot Demonstrate that HUD Acted in
Bad Faith .............................................................................................................. 11

       B.    Plaintiff's Claim Impermissibly Seeks to Alter the Plain Language of the
Contract and Impose New Terms .......................................................................... 12

**CONCLUSION** ........................................................................................................................ 14

**TABLE OF AUTHORITIES**

**Cases**

*Adair v. Eng.*, 183 F. Supp. 2d 31, 60 (D.D.C. 2002) .................................................................. 11

*Albrecht v. Comm. on Emp. Benefits of the Fed. Reserve Emp. Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004) .................................................................................... 7–8, 9\*\*\*

*Allen Eng'g Contractor Inc. v. United States*, 611 F. App'x 701
(Fed. Cir. 2015) ................................................................................................................ 12, 13\*\*\*

*Am. Sci. & Eng., Inc. v. Califano*, 571 F.2d 58 (1st Cir. 1978) ....................................................... 8

*Anderson v. Carter*, 802 F.3d 4 (D.C. Cir. 2015) ............................................................................ 7

*Bobula v. United States Dep't of Justice*, 970 F.2d 854 (Fed. Cir. 1992) ...................................... 7

*Cathedral Sq. Partners Ltd. P'ship v. S.D. Hous. Dev. Auth.*, 679 F. Supp. 2d 1034
(D.S.D. 2009) ......................................................................................................................... 10

*Corel Corp. v. United States*, 165 F. Supp. 2d 12, 35 (D.D.C. 2001) ............................. 11, 12\*\*\*

*Daniels v. United States*, 947 F. Supp. 2d 11 (D.D.C. May 30, 2013) .......................................... 7

*Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 105 F. Supp. 3d 907
(E.D. Wis. 2015) ................................................................................................................. 9\*\*\*

*Greenleaf Ltd. P'ship v. Ill. Hous. Dev. Auth.*, No. 08–CV–2480, 2013 WL 4782017, at \*4-5
(N.D.Ill. Sept. 6, 2013) .......................................................................................................... 10

*Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49 (D.D.C. 2012) ....................... 12

*Int'l Eng'g Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d 573
(D.C. Cir. 1975) ....................................................................................................................... 8

*Mack Bros. v. Me. State Hous. Auth.*, No. 2:10-cv-00087, 2011 WL 2633084, at \*8–9 14
(D. Me. Jun. 24, 2011) ...................................................................................................9, 10\*\*\*

*N. Side Lumber v. Block*, 753 F.2d 1482, 1484 (9th Cir.) ............................................................11

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930 (D.C. Cir. 2004) ....................... 9

*One & Ken Valley Hous. Group v. Me. State Hous. Auth.*, No. 1:09-cv-642,
2011 WL 2632433, at \*8-10, 14–15, (D. Me. Jun. 24, 2011) .................................................. 10

*Perry Capital LLC v. Mnuchin*, 848 F.3d 1072 (D.C. Cir. 2017) ........................................7, 9\*\*\*

*Rondeau v. United States*, No. 05-561C, 2005 WL 6112660, at \*3 (Fed. Cl. July 8, 2005) ......... 7

*Village W. Assocs. v. R.I. Hous. & Mortg. Fin. Corp.*, 618 F. Supp. 2d 134 (D.R.I. 2009) ................................................................................................................... 9–10

*Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163 (D.D.C. Aug. 3, 2007) ................ 11

**Statutes**

5 U.S.C § 702 ...........................................................................................................................7\*\*\*

5 U.S.C § 704 ...........................................................................................................................9\*\*\*

12 U.S.C. § 1710(g) ...................................................................................................................... 10

12 U.S.C. § 1710(i) ....................................................................................................................... 10

28 U.S.C. § 1491(a)(1) .................................................................................................................... 7

42 U.S.C. § 3533(b) ........................................................................................................................ 3

**Regulations**

24 C.F.R. § 17.61 ............................................................................................................................ 5

24 C.F.R. § 17.69 ....................................................................................................................... 5–6, 8

\*\*\* Authorities chiefly relied on

**EXECUTIVE SUMMARY**

Associated Mortgage Banker's (AMB) problems began when it originated the mortgage at issue in its complaint (the Non-Compliant Mortgage), without complying with U.S. Department of Housing and Urban Development (HUD) rules and regulations.  Recognizing that AMB's lending violation increased the risk to HUD, which insured the Non-Compliant Mortgage, AMB agreed in writing to indemnify HUD for its losses.  The Non-Compliant Mortgage predictably went into default.  Nevertheless, AMB refused to honor its promise to indemnify.  Then, rather than waiting for HUD to administratively offset or sue for breach of contract, AMB shoe-horned its contract arguments into the putative class-action claims now before the Court.

In its complaint, AMB asserts that HUD erred in selling the Non-Compliant Mortgage in a pooled sale, leaving AMB responsible under an indemnification agreement to repay HUD approximately $160,000.  An Administrative Judge (AJ) subsequently confirmed that AMB is in fact contractually obligated to pay HUD.  These core facts, according to AMB, give rise to class-wide claims against HUD and its Secretary for violation of the Administrative Procedure Act (APA) and breach of the implied covenant of good faith and fair dealing.  Even assuming the veracity of AMB's allegations, AMB has failed to state valid claims.  Accordingly, the Court should dismiss the complaint in its entirety.

First, the Court lacks jurisdiction to consider the APA claim, because the waiver of sovereign immunity in the APA does not extend to suits like this, where the gravamen of the complaint is a claim for breach of a contract.  But even if the Court had jurisdiction to consider the claim, an APA claim cannot be stated where, as here, the law provides an adequate alternative remedy.  If AMB has any valid claims against HUD for allegedly breaching the

indemnification agreement, it could pursue those claims in an action for breach of contract. Indeed, courts have routinely dismissed APA claims where breach of contract can be pursued. The same routine reasoning applies here, requiring dismissal of AMB's claim under the APA.

AMB's good faith-and-fair-dealing claim must also be dismissed. To state a claim for breach of the implied covenant of good faith and fair dealing, AMB must overcome the recognized presumption that government officials act in good faith, by pleading specific instances where HUD acted in bad faith, with a specific intent to injure AMB. The complaint makes no such allegations; it instead merely claims that HUD acted mistakenly or, at most, negligently in mitigating losses caused by AMB's breach. Such allegations do not suffice.

Critically, AMB's good-faith-and-fair-dealing claim is also belied by the plain language of the indemnification agreement. AMB's claim impermissibly seeks to alter its original bargain with HUD by inserting new terms into the agreement. The only argument AMB can muster to support its attempt to rewrite the indemnification agreement is that HUD's efforts to sell the Non-Compliant Mortgage may have contradicted parts of a *separate* agreement, the Participating Servicer Agreement (PSA) between HUD and JPMorgan Chase Bank (Chase Bank). But AMB is not a party to the PSA, and the PSA explicitly excludes any third-party beneficiaries. Moreover, the PSA could not possibly have formed the basis of the original bargain AMB and HUD struck, because the PSA was not executed until five months *after* HUD and AMB executed the indemnification agreement.

**BACKGROUND**

**I.     AMB Originated a Non-Compliant Mortgage**

Congress created the Federal Housing Administration (FHA) in 1934 to encourage mortgagee financial institutions to make loans to support home ownership by, among other things, extending mortgage insurance to protect the mortgagees against financial losses caused by mortgage defaults.  FHA now operates within HUD (*see* 42 U.S.C. § 3533(b)) and is the largest insurer of home mortgages in the world.  *See* Compl. ¶ 5 (Dkt 1, filed Jan. 12, 2017) (the Complaint).

AMB is an FHA-approved mortgage originator. Compl. ¶ 2.  To participate in the FHA's insurance program, AMB must issue loans following HUD's rules and regulations.  During a September 2012 review of AMB's practices, however, HUD discovered that AMB had violated those rules and regulations in originating mortgages, including the Non-Compliant Mortgage at issue in AMB's complaint.  Compl. ¶ 9; Ex. F, FHA Case No. 374-5838647, Administrative Judge Decision and Order (the AJ Decision), at 2.  Because of AMB's lending practices, the Non-Compliant Mortgage faced increased risk of default, thus subjecting HUD to an increased probability that it would be liable for an insurance claim from the mortgage servicer, Chase Bank.[2]  *See* Compl. Ex. F at 2.

To resolve the increased risk to HUD caused by AMB's lending practices, AMB agreed to enter an indemnification agreement (the Indemnification Agreement).  *See* Compl. ¶ 9, Exs. A, F at 2.  It is a single page contract, through which AMB agreed to indemnify HUD for losses on the Non-Compliant Mortgage.   Compl. Ex. A.

---

[2] Chase Bank both owned and serviced the Non-Compliant Mortgage.

The Non-Compliant Mortgage went into default. Compl. Ex F at 2; *see* Compl. Ex. G at 29. Chase Bank, as owner and servicer of the mortgage, thereafter filed a claim for mortgage insurance in the amount of $520,979.86 to recover its losses on the defaulted Non-Compliant Mortgage, which HUD paid. Compl. Ex. E at 2. HUD mitigated its losses by selling the Non-Compliant Mortgage for $360,531.24, in a pooled sale with other mortgages through its Single Family Loan Sale (SFLS) program. Compl. ¶¶ 9, 25.

## II. AMB Agreed to Indemnify HUD for the Non-Compliant Mortgage

Upon default of the Non-Compliant Mortgage, AMB became liable to indemnify HUD for its losses on the loan. The Indemnification Agreement provides that AMB "agrees to indemnify HUD for losses which have been or may be incurred related to the [Non-Compliant Mortgage], . . . which is in default, or goes into default, through and up to five years from the loan's date of endorsement." Compl. Ex. A. ¶ 1. The Indemnification Agreement then lists several alternative ways to pursue indemnification, including: subparagraph (b), which allows HUD, "at its option" to convey the property to AMB; subparagraph (c), which governs sale of the property to a third party; and subparagraph (d), which provides a catch-all allowing for and governing "any other case where a HUD/FHA insurance claim is pending or has been paid." Compl. Ex. A ¶ 1.

HUD sold the Non-Compliant Mortgage itself, rather than the real property securing the loan. Compl. ¶ 10. Nothing in the Indemnification Agreement precluded such a sale. Rather, subparagraph (d) expressly allows for indemnification in "any other case" other than the property sales discussed in subparagraphs (b) and (c). Compl. Ex. A ¶ 1. Moreover, the agreement explicitly refers to HUD's authority to sell the mortgage note. Under subparagraph (d), AMB was liable to pay HUD "the amount of HUD's Investment, in accordance with the terms of an

invoice or bill the Department sends to the Mortgagee." Subparagraph (a) then defines the "HUD's Investment" and describes in clear terms how to account for HUD's sale of the note itself:

> HUD's Investment includes, but is not limited to: the full amount of the Insurance claim actually paid, all taxes and assessments paid or payable to HUD, all maintenance and operating expenses paid or payable to HUD (including costs of rehabilitation and preservation), loss mitigation, ***prorated losses from and expenses associated with sale of the note***, reasonable penalties for failure to pay amounts owed within the time frame established on HUD invoices, interest on the amount owed at 5% annum calculated from the date of the first bill, all sales expenses and any other expenses HUD may incur in connection with its claim disposition programs regarding FHA insured mortgages. To the extent HUD recoups any losses (e.g. receipts for the sale of the property) or there is any discount on the property (e.g. an Officer Next Door discount), HUD will deduct the amount of the recoupment or discount from HUD's investment.

Compl. Ex. A ¶ 1(a) (emphasis added).

### III. AMB Refused to Honor its Agreement to Indemnify HUD

HUD sought indemnification for its losses on the Non-Compliant Mortgage. Compl. ¶ 27. Those losses include $160,448.62, representing the difference between Chase Bank's insurance claim and proceeds from the loan sale. Compl. ¶ 27. AMB is also obligated to pay interest, penalties, and administrative costs, as described in subparagraph 1(a) of the Indemnification Agreement. Rather than honoring its contractual obligations to pay those amounts, AMB refused to indemnify HUD for its losses. Compl. ¶ 29. HUD attempted to recover AMB's debt through administrative means, notifying AMB of its intent to seek an offset of its losses against any other federal payments owed to AMB. Compl. ¶ 27; Compl. Ex. F at 1.

AMB delayed the offset by filing an objection and requesting an administrative hearing under the procedures described in 24 C.F.R. § 17.61, *et seq.* Compl. ¶ 29. Those procedures require an AJ to consider whether the debt is "past due and legally enforceable." 24 C.F.R. §

17.69. The AJ noted that "the underlying facts of this case are not in dispute." Compl. Ex. F at 2. After full hearing on the matter, the AJ concluded that AMB "is contractually obligated to pay the alleged debt," and thus denied AMB's request to block the administrative offset. Compl. Ex. F at 9; *see* Compl. ¶ 31. AMB then filed its complaint.

### IV. The Participating Servicer Agreement with Chase Bank Provides No Third Party Rights to AMB

The Indemnification Agreement defines AMB's rights and obligations and makes no reference to rights provided to AMB by any other agreement. *See* Compl. Ex. A. Nevertheless, AMB's complaint relies extensively on allegations that sale through the SFLS program is inconsistent with parts of a "Participating Servicer Agreement" (PSA), attached as Exhibit C to the complaint. *See, e.g.,* Compl. ¶¶ 14–16, 21–23; Ex. C. Yet, the PSA is a contract only between Chase Bank and HUD; it was executed on May 22, 2013 – five months *after* the Indemnification Agreement; and the PSA explicitly precludes third party beneficiaries. Compl. Ex. C at 5, § 8.13. The PSA states that it "is intended for the sole benefit of the Parties and their respective successors and permitted assigns, and *there shall be no third party beneficiaries*." Compl. Ex. C § 8.13 (emphasis added).

### ARGUMENT

### I. Plaintiff's APA Claim (Count I) Must Be Dismissed

#### A. Congress Has Not Waived Sovereign Immunity to Plaintiff's APA Claim Because the Tucker Act Forbids the Requested Relief

The Court lacks jurisdiction to consider AMB's claim under the APA, because no explicit waiver of sovereign immunity allows it. The standard for sovereign immunity is well-settled: "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction. The government's consent to be sued may not be

inferred, but must be unequivocally expressed in statutory text. Moreover, a waiver of the [g]overnment's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Anderson v. Carter*, 802 F.3d 4, 8 (D.C. Cir. 2015) (internal citations and marks omitted).

Congress waived sovereign immunity in the APA for those "suffering legal wrong because of federal government agency action." 5 U.S.C. § 702. The waiver is, however, a limited one: the APA does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id*.

AMB's claim under the APA concerns a contract dispute and seeks only declaratory and injunctive relief. *See* Compl. at 14. The Tucker Act permits contract claims against the government, but it impliedly forbids actions that seek declaratory or injunctive relief when that relief is not incidental to money damages. *See* 28 U.S.C. § 1491(a)(1); *Bobula v. United States Dep't of Justice*, 970 F.2d 854, 859 (Fed. Cir. 1992) ("While limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental to and collateral to a claim for money damages."); *Daniels v. United States*, 947 F. Supp. 2d 11, 19 (D.D.C. 2013) (accord); *Rondeau v. United States*, No. 05-561C, 2005 WL 6112660, at *3 (Fed. Cl. July 8, 2005) ("Under the terms of the Tucker Act, this Court may only provide injunctive and declaratory relief to the extent that the relief is incidental to and collateral to a claim for money damages.") (internal marks omitted) (quoting *Bobula,* 970 F.2d at 859).

For this reason, courts "have interpreted the Tucker Act . . . to impliedly forbid contract claims against the Government from being brought in district court under the waiver in the APA." *Perry Capital LLC v. Mnuchin*, 848 F.3d 1072, 1099 (D.C. Cir. 2017) (internal marks omitted) (quoting *Albrecht v. Comm. on Emp. Benefits of the Fed. Reserve Emp. Benefits Sys.*,

357 F.3d 62, 67–68 (D.C. Cir. 2004)). Here, the Tucker Act would allow a contract suit to resolve an alleged breach of the Indemnification Agreement, but the Tucker Act impliedly forbids the declaratory and injunctive relief AMB seeks. The waiver of immunity in the APA does not allow AMB to get that forbidden relief through another route. *Id.*

That the complaint asserts boilerplate language about "arbitrary and capricious" agency action does not change this result. Courts instead look beyond such assertions to determine whether the claims are in essence contract based, and thus precluded from APA review. *See Int'l Eng'g Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d 573, 578 (D.C. Cir. 1975) (where "gravamen of [plaintiff's] complaint is a claim for breach of contract," court held that plaintiff had "a remedy in the Court of Claims," precluding APA review, even though complaint sought injunction under the APA); *Am. Sci. & Eng., Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978) (noting that "[c]ourts have consistently rejected [plaintiffs'] attempts to cast a contract dispute in different terms" in order to state a cause of action under the APA).

To determine whether a complaint asserts contract based claims, courts consider "both the source of the rights upon which the plaintiff bases its claims and the type of relief sought (or appropriate)." *Albrecht*, 357 F.3d at 68 (internal marks omitted). In this case, the claims and relief sought by AMB arise from the Indemnification Agreement. The complaint, for instance, alleges that HUD "breached the terms" of the Indemnification Agreement. Compl. ¶ 18. And the relief AMB seeks is to "[d]eclare HUD in breach of the Indemnification Agreement," and to enjoin HUD's efforts to collect under that agreement. Compl. at 14.[3] Because the dispute is

---

[3] The only asserted agency action underlying the Complaint's APA claim is the ALJ Decision, which itself was limited to considering the parties' rights under the Indemnification Agreement. *See* Compl. Ex. F at 1; *see* 24 C.F.R. § 17.69 (limiting ALJ review to determining whether debt is "past due and legally enforceable").

contractual, the APA's waiver of immunity does not extend to AMB's claim. *See Perry Capital*, 848 F.3d at 1099.

      B.    <u>Plaintiff Cannot State a Claim under the APA Because It Has an Adequate Alternative Remedy</u>

Even if this Court had jurisdiction to consider it, AMB fails to state a claim under the APA because it has an adequate alternative remedy. Causes of action under the APA are limited to circumstances where "there is no other adequate remedy in a court." 5 U.S.C § 704.[4] Here, AMB's allegations arise from the Indemnification Agreement. *See supra* at 8. To the extent that AMB might have any claims against HUD, those claims would be for breach of contract. Indeed, AMB attempts to plead a contract claim in Count II of its complaint for breach of the implied covenant of good faith and fair dealing. Although AMB's contract-based claim is deficient for other reasons, *see infra.* at § II, a court's ability to adjudicate its contract claims necessarily precludes AMB from seeking relief under the APA. *See Perry Capital*, 848 F.3d at 1102 (holding that the absence of an adequate alternative remedy is "an element of the cause of action created by the APA"); *see also Albrecht*, 357 F.3d at 68 (holding that APA does not extend to "contract actions brought against the government").

Courts have routinely rejected similar attempts to pursue contract claims against HUD under the guise of an APA claim. *See Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 105 F. Supp. 3d 907, 921 (E.D. Wis. 2015); *Mack Bros. v. Me. State Hous. Auth.*, No. 2:10-cv-00087, 2011 WL 2633084, at *8–9 14 (D. Me. Jun. 24, 2011); *Village W. Assocs. v. R.I.*

---

[4] Prior decisions concluded that the lack of alternative remedy requirement of § 704 provided a jurisdictional bar to review because § 704 limited the APA's waiver of sovereign immunity. *See, e.g., Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 947 (D.C. Cir. 2004). The D.C. Circuit recently overruled that position, holding § 704 does not limit the waiver of sovereign immunity; it instead provides a non-jurisdictional element needed to establish an APA claim. *See Perry Capital*, 848 F.3d at 1102.

- 9 -

<200b><200b><200b><200b><200b><200b><200b><200b><200b><200b>

*Hous. & Mortg. Fin. Corp.*, 618 F. Supp. 2d 134, 138–39 (D.R.I. 2009); *Cathedral Sq. Partners Ltd. P'ship v. S.D. Hous. Dev. Auth.*, 679 F. Supp. 2d 1034, 1040–44 (D.S.D. 2009); *Greenleaf Ltd. P'ship v. Ill. Hous. Dev. Auth.*, No. 08-CV-2480, 2013 WL 4782017 at *4-5 (N.D. Ill. Sept. 6, 2013); *One & Ken Valley Hous. Grp. v. Me. State Hous. Auth.*, No. 1:09-cv-642, 2011 WL 2632433, at *8-10, 14–15, (D. Me. Jun. 24, 2011) (Report and Recommendation adopted, 2011 WL 4834258, (D. Me. Oct. 12, 2011)).

As one court explained, "the contracts in question are the source of the alleged right . . . rather than any statute or regulation mandating performance. Consequently, when these claims are advanced against HUD they are appropriately pursued as breach of contract claims rather than as APA claims for judicial review of agency action." *Mack Bros.*, 2011 WL 2633084, at *8–9, 14. Just as in *Mack Bros.*, AMB here does not claim that the agency's final action exceeded HUD's statutory or regulatory authority;[5] the gravamen of the Complaint is instead that HUD breached the Indemnification Agreement. The appropriate route for that allegation is a breach of contract claim.

---

[5] Instead the applicable statute here, the National Housing Act, only *refutes* AMB's claims. First, the National Housing Act gives the Secretary broad discretion as to how it sells property it acquires. *See* 12 U.S.C. § 1710(g) ("The Secretary may sell real and personal property acquired by the Secretary pursuant to the provisions of this Act on such terms and conditions as the Secretary may prescribe."). Second, the National Housing Act, states that no duty is owed to mortgagees in conveying mortgages. 12 U.S.C. § 1710(i) ("No mortgagee or mortgagor shall have . . .any right or interest in any property conveyed to the Secretary or any claim assigned to him; nor shall the Secretary owe any duty to any mortgagee . . . with respect to the handling or disposal of any such property or the collection of any such claim.").

## II. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II) Must be Dismissed

### A. Plaintiff Has Not Alleged, and Cannot Demonstrate that HUD Acted in Bad Faith

While federal common law[6] implies in each contract a duty of good faith and fair dealing, "government officials are presumed to act in good faith." *Adair v. Eng.*, 183 F. Supp. 2d 31, 60 (D.D.C. 2002) (Urbina, J.) (internal marks omitted) (quoting *China Trade Ctr., L.L.C. v. Wash. Metro. Area Transit Auth.*, 34 F. Supp. 2d 67, 70–71 (D.D.C. 1999) (Sporkin, J.), *aff'd*, No. 99-7029, 1999 WL 615078 (D.C. Cir. 1999) (per curiam)). To justify departing from that presumption, "the plaintiff must allege and prove, by clear and strong evidence, specific acts of bad faith on the part of the government. In the context of government contracting cases, courts have generally required well nigh irrefragable proof of bad faith, which has been equated with evidence of some specific intent to injure the plaintiff." *Corel Corp. v. United States*, 165 F. Supp. 2d 12, 35 (D.D.C. 2001) (Roberts, J.) (internal marks omitted) (quoting *Libertatia Assocs., Inc. v. United States*, 46 Fed. Cl. 702, 706 (2000)).

Rather than alleging specific acts of bad faith with a specific intent to injure, the complaint instead vaguely asserts, at most, that HUD acted negligently. ABM alleges that HUD "fail[ed] to follow its own procedures," made a "mistake," had a "disregard of its obligations," and displayed a "lack of diligence and/or negligence." Compl. ¶¶ 20, 28, 35, 56. Such allegations, if proven true, show no more than negligence, or a mistaken course of action; but

---

[6] The Indemnification Agreement is governed by federal common law. *See Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 180 (D.D.C. Aug. 3, 2007) ("[F]ederal common law of contracts applies to contracts with the federal government.") (quoting *N. Side Lumber v. Block*, 753 F.2d 1482, 1484 (9th Cir. 1985)).

"[b]ad faith means more than mere negligence." *See Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 54 (D.D.C. 2012) (Boasberg, J.) (granting motion to dismiss where plaintiff's allegations "amount to a series of mistakes and were not the result of an interested or corrupt motive") (quoting *Allworth v. Howard Univ.*, 890 A.2d 194, 202 (D.C. 2006)). The complaint does not assert any specific intent to cause injury to AMB, and thus does not come close to alleging the "well nigh irrefragable proof" necessary to overcome the presumption that HUD acted in good faith in discharging its obligations under the Indemnification Agreement. *See Corel Corp.*, 165 F. Supp. 2d at 35.

      B.    <u>Plaintiff's Claim Impermissibly Seeks to Alter the Plain Language of the Contract and Impose New Terms</u>

AMB's good-faith-and-fair-dealing claim fails for the additional reason that it contradicts the Indemnification Agreement, and seeks to impose new, un-bargained for terms. As courts have explained, "[t]he implied duty of good faith and fair dealing cannot expand a party's contractual duties. This means that 'an act will not be found to violate the duty. . . if such a finding would be at odds with the terms of the original bargain, . . . by altering the contract's discernible allocation of risks and benefits . . . .'" *Allen Eng'g Contractor Inc. v. United States*, 611 F. App'x 701, 709 (Fed. Cir. 2015) (quoting *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014)).

AMB alleges that the Indemnification Agreement required HUD to sell the property securing the mortgage, rather than selling the mortgage loan itself. *See* Compl. ¶ 24. The plain terms of the Indemnification Agreement, however, contemplate that HUD may mitigate damages by selling the loan. Subparagraph (d) of the contract allows for indemnification in "any other case" other than the property sales described in subparagraphs (b) and (c). Compl. Ex. A §1(d). Moreover, the agreement explicitly refers to HUD's authority to sell the note. Under

- 13 -

subparagraph (d), AMB is liable to pay HUD "the amount of HUD's Investment."  *Id.*  Subparagraph (a) then defines "HUD's Investment" to include "prorated losses from and expenses associated with *sale of the note*."  Compl. Ex. A. § 1(a) (emphasis added).

The complaint also alleges that HUD breached the implied convent of good faith and fair dealing by selling the note through the SFLS, rather than through an individual sale.  *See* Compl. ¶ 56.  No provision of the contract prohibits selling the loan through a pooled sale such as the SFLS.  *See* Compl. ¶ 54 (noting no breach of "an express contractual provision").  The complaint instead alleges only that the SFLS sale may have contradicted parts of a *different* agreement, the PSA.  But AMB is not a party to the PSA.  The PSA instead explicitly states that it is an agreement solely between Chase Bank and HUD, and that there are "no third party beneficiaries."  Compl. Ex. C § 8.13.  But even without that express prohibition, the PSA could not have played a part of the "original bargain" between HUD and AMB for the simple reason that the PSA was executed five months *after* the Indemnification Agreement.  *Compare* Ex. A and Ex. C at 5.  Incorporating the PSA into the Indemnification Agreement now would thus impermissibly "alte[r] the [Indemnification Agreement's] discernible allocation of risks and benefits."  *Allen Eng'g Contractor*, 611 F. App'x at 709.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted.

Respectfully submitted this 23nd day of May, 2017.

        CHAD A. READLER
        Acting Assistant Attorney General

        RUTH A. HARVEY
        Director

        J. TAYLOR McCONKIE
        Assistant Director

        *s/ Kevin P. VanLandingham*
        KEVIN P. VANLANDINGHAM
        (NY Reg. No. 4741799)
        Trial Attorney
        U.S. Department of Justice,
        Civil Division
        P.O. Box 875, Ben Franklin Station
        Washington, D.C. 20044-0875
        Telephone: (202) 307-1134
        Facsimile: (202) 514-9163
        kevin.p.vanlandingham@usdoj.gov
        ATTORNEYS FOR THE DEFENDANTS

Of Counsel:

Batina Wills-Washington
Office of General Counsel
U.S. Department of Housing and
Urban Development
batina.wills-washington@hud.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 23, 2017, I electronically filed the foregoing Defendant's Motion to Dismiss, Memorandum of Points and Authorities, and Proposed Order with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*s/ Kevin P. VanLandingham*
KEVIN P. VANLANDINGHAM