UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| ASSOCIATED MORTGAGE BANKERS INC., |
| Plaintiff, |
| v. |
| BEN CARSON, *et al.*, |
| Defendants. |

Civil Action No. 17-0075 (ESH)

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendants' motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants the motion in part and denies the motion in part.

**BACKGROUND**

This suit involves a disagreement about the import of an indemnification agreement ("the Indemnification Agreement") between plaintiff and defendants. Plaintiff Associated Mortgage Bankers, Inc. ("AMB" or "plaintiff") originates mortgage loans, including mortgages that were eligible for insurance under the Fair Housing Act ("FHA") insurance program administered by defendant Department of Housing and Urban Development ("HUD") and its Secretary, defendant Ben Carson[1] (collectively, "defendants"). (Compl. ¶ 2.) In 2012, in connection with a HUD audit of an individual mortgage loan ("the Loan"), AMB entered into the Indemnification

---

[1] Under Federal Rule of Civil Procedure 25(d), Ben Carson, the current Secretary of HUD, is automatically substituted as the named defendant for Julian Castro, the former Secretary.

Agreement with HUD.² (*Id.* ¶ 9.)

Therein, AMB agreed to indemnify HUD for losses "which have been or may be incurred related" to the Loan in the event of default "up to five years from the loan's date of endorsement." (*Id.* Ex. A ¶ 1.) Paragraph 1(a) provides that "[i]n the event of a valid claim for insurance on any of the mortgages covered by this Agreement, indemnification will be in accordance with paragraph (b), (c), (d), or (e), whichever applies." (*Id.* Ex. A ¶ 1(a).) Paragraph 1(a) defines HUD's investment and explains that "[t]o the extent HUD recoups any losses . . . or there is any discount on the property . . . HUD will deduct the amount of the recoupment or discount from HUD's Investment." (*Id.*)

Paragraph 1(b) defines AMB's liability in the event HUD conveys the property to the mortgagee, AMB, and further adds that "[i]f HUD does not convey the property to the Mortgagee, indemnification shall be calculated in accordance with paragraphs (c) or (d) as appropriate." (*Id.* Ex. A ¶ 1(b).)

Paragraph 1(c) provides in relevant part:

> Where a HUD/FHA insurance claim has been paid in full and the property has been sold by HUD to a third party, the amount of indemnification is HUD's Investment as defined in paragraph (a), minus the sales price of the property to be paid in accordance with the terms of an invoice or bill the Department sends to the Mortgagee [AMB].

(*Id.* Ex. A ¶ 1(c).) Paragraph 1(d) provides in relevant part: "In any other case . . . the mortgagee shall pay HUD the amount of HUD's Investment in accordance with the terms of an invoice or bill the Department sends to the Mortgagee." (*Id.* Ex. A ¶ 1(d).)³

---

² According to defendants, AMB agreed to indemnify HUD because a September 2012 review of AMB's lending practices led HUD to discover that AMB had violated the rules and regulations for originating FHA mortgages. (Defs.' Mot. to Dismiss at 3.)

³ It is undisputed that paragraph 1(e) does not apply to the current dispute.

2

Finally, paragraph 2 states: "Any material breach of the terms and conditions of this Indemnification Agreement shall constitute independent grounds for imposition of administrative sanctions by the Mortgagee Review Board against Mortgagee pursuant to 24 CFR Part 25." (*Id.* Ex. A ¶ 2.) The Indemnification Agreement does not otherwise limit or define the remedies either party can pursue in the event of breach. (*See id.*)

On September 19, 2013, HUD sold the note for the Loan for $360,531.24—instead of selling the property/collateral for the Loan—through its Single Family Loan Sale ("SFLS") program. (*Id.* ¶¶ 10, 25.) HUD designed the SFLS program to reduce HUD's timelines for carrying costs of properties and to limit HUD's losses. (*Id.* ¶ 11; *id.* Ex. C.) Loans sold in the SFLS pool often garner a lower sales value because of the program's structure. (*Id.* ¶¶ 11–12; *id.* Ex. C.) Indeed, HUD only obtained 66% of the Loan collateral's appraised value. (*Id.* ¶ 10.)[4]

"In order to sell notes as part of a bulk sale," HUD executed a Participating Service Agreement ("PSA") with the servicer of the loans, JPMorgan Chase Bank, N.A ("JPMorgan"), pursuant to HUD's statutory and regulatory authorizations. (*Id.* ¶ 14; *id.* Ex. C.) The PSA required JPMorgan to submit an SFLS Claim Submission Report "to HUD after which HUD would advise [Servicer] of those 'Eligible Mortgage Loans' which [Servicer] could include in the pool and subsequently file a claim for insurance." (*Id.* ¶ 14 (alteration in original); *see also id.* Ex. C at 15–16.) The PSA defines "Eligible Mortgage Loans" as, *inter alia*, a mortgage loan that "is not subject to an Indemnification Agreement, or other settlement agreement setting forth specific obligations with respect to Mortgage Loan unless such obligations have been fully

---

[4] The parties dispute the estimate AMB provided for the collateral's appraised value, but at this stage of litigation, the Court accepts AMB's well-pleaded factual allegations as true, giving the property an approximate appraisal value between $530,100 and $550,000 at the time HUD sold the note for the Loan. (Compl. ¶¶ 21, 26.) HUD sold the note attached to the Loan in an SFLS pool to a bidder identified as "SRMOF II 2012-1 Trust." (*Id.* ¶ 10.)

3

satisfied." (*Id.* Ex. C at 9.) HUD was responsible for screening the SFLS pool for ineligible mortgage loans subject to an indemnification agreement.[5] The Loan was listed on HUD's FHA system as a loan subject to an indemnification agreement, meaning it was not an "Eligible Mortgage Loan" for the bulk sale. (*Id.* ¶ 17; *id.* Ex. D.) Therefore, according to the terms of the PSA, HUD should not have allowed the Loan to be sold as part of the bulk sale.

Almost a year after the sale, on July 28, 2014, AMB received notification that HUD sought $160,448.62 from AMB as insurable losses due under the Indemnification Agreement. (*Id.* ¶ 27.) When AMB objected to the sale, HUD replied that HUD "believe[s] that this debt is both past due and legally enforceable" despite "acknowledg[ing] that the indemnified loan was erroneously included in a Single Family Loan Sale (SFLS) Program." (*Id.* Ex. E.)

AMB timely appealed to HUD's Office of Hearings and Appeals, and on December 17, 2014, the Administrative Judge ("AJ") "issued a stay pending a final decision on AMB's appeal." (*Id.* ¶ 30.) On December 16, 2016, the AJ issued a Decision and Order under its jurisdiction to determine if AMB's "debt is past due and legally enforceable pursuant to 24 C.F.R. §§ 17.61 et. seq. . . . in accordance with the procedures set forth in 24 C.F.R. §§ 17.69 and 17.73." (*Id.* Ex. F at 1.) The AJ found that (1) the insurance claim was valid, (2) HUD did not breach the Indemnification Agreement by including the Loan in the SFLS Program bulk sale,

---

[5] The PSA provides:

> HUD's identification process will be used only to identify mortgage loans submitted as potential SFLS Claims by Participating Servicers and not to screen mortgage loans for eligibility, *with the exception of mortgage loans subject to an Indemnification Agreement*. . . . HUD will not issue an SFLS Claim Identification Date for *any mortgage loans for which Indemnification Agreements* are identified on HUD's system of records.

(Compl. Ex. C at 16) (emphasis added).

4

(3) HUD did not act in contravention of its own internal guidance when it failed to abide by the terms of the PSA, and (4) the sale of the Loan through the SFLS Program did not violate the implied covenants of good faith and fair dealing in the Indemnification Agreement between AMB and HUD. (*Id.* Ex. F at 3–9.) Accordingly, the AJ vacated the stay and authorized the collection of the "outstanding obligation by means of administrative offset of any federal payment due." (*Id.* Ex F at 9.)

On January 12, 2017, AMB filed the instant complaint requesting that the Court (1) set aside the AJ's decision as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law in violation of the Administrative Procedure Act ("APA"); (2) declare HUD to be in breach of the Indemnification Agreement; (3) enjoin HUD from issuing any administrative offset or referring the debt to Treasury for collection; (4) certify this matter as a class action with AMB representing a class of similarly-situated lenders; (5) issue a preliminary injunction restraining HUD and its agents from taking action against AMB or the proposed class; and (6) award AMB attorney's fees and expenses, as well as granting any other proper relief. AMB pleaded two substantive counts to support its requested relief: (1) violation of the APA, 5 U.S.C. § 706(2)(A), and (2) breach of the covenant of good faith and fair dealing. (*Id.* ¶¶ 47–56.)

On May 23, 2017, defendants moved to dismiss for lack of jurisdiction and for failure to state a claim. Defendants argue that the Court lacks jurisdiction to consider Count I, the APA claim, because HUD has sovereign immunity in cases "where the gravamen of the complaint is a breach of a contract." (Defs.' Mot. to Dismiss at 1.) Alternatively, defendants maintain that even if this Court has jurisdiction, the APA claim lacks merit because the law provides an adequate alternative remedy through a separate action for breach of contract. (*Id.* at 1–2.) As to Count II,

5

which alleges a breach of the covenant of good faith and fair dealing, defendants argue that the claim is "belied by the plain language of the indemnification agreement" and AMB is actually objecting to a violation of the PSA—an agreement that explicitly excludes any third-party beneficiaries and was executed after AMB entered into the Indemnification Agreement with HUD. (*Id.* at 1–2.)

## ANALYSIS

**I.     LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must demonstrate that the Court has subject matter jurisdiction. *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). In disposing of such a motion, the Court "may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Sibley v. U.S. Supreme Court*, 786 F. Supp. 2d 338, 341 (D.D.C. 2011).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss under Rule 12(b)(6), the Court "may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks*

*Corp. Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

## II. COUNT II: GOOD-FAITH-AND-FAIR-DEALING CLAIM

Plaintiff's Count II—breach of the covenant of good faith and fair dealing—appears to relate to plaintiff's request that this Court declare HUD to be in breach of the Indemnification Agreement. This Court cannot reach the merits of Count II because the claim and the requested relief are within the Tucker Act's exclusive jurisdiction. 28 U.S.C. § 1491; *Julien v. CCA of Tennessee, Inc.*, 268 F. Supp. 2d 19, 21 (D.D.C. 2003) ("At the outset, the court must assure itself that it has subject-matter jurisdiction over the action."); *see also Cobell v. Norton*, 240 F.3d 1081, 1094 (D.C. Cir. 2001).

The Tucker Act grants the United States Court of Federal Claims jurisdiction over "claims against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). This grant of jurisdiction is exclusive "only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court." *Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988). "Absent other grounds for district court jurisdiction, a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Kidwell v. Dep't of Army, Bd. for Corr. of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995). The fact that a plaintiff does not ask for monetary damages is not dispositive. *See id.* A plaintiff cannot "bypass Tucker Act jurisdiction by converting complaints which 'at their essence' seek money damages from the government into complaints requesting injunctive relief or declaratory actions." *Id.*; *see also Van Allen v. U.S. Dep't of Veterans Affairs*, 925 F. Supp. 2d 119, 125 (D.D.C. 2013). Instead, requested

relief must have "'considerable value' independent of any future potential for monetary relief" to escape the Tucker Act's exclusive jurisdiction. *Kidwell*, 56 F.3d at 284.

A declaration that HUD has breached the Indemnification Agreement does not have considerable value independent of its future potential for monetary relief. *See id.*; *see also Weeks v. Hous. Auth.*, 887 F. Supp. 2d 1232, 1237 (M.D. Ala. 2012). Thus, the Court dismisses plaintiff's good-faith-and-fair-dealing claim for it cannot enter declaratory relief, injunctive relief, or certify a class where it lacks jurisdiction over the claim at issue. *See Khadr*, 529 F.3d at 1115.

## III. COUNT I: APA CLAIM

Plaintiff challenges the AJ's decision as arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2)(A).[6] This Court concludes that it has jurisdiction to consider plaintiff's APA claim and that plaintiff has stated a facially plausible challenge to the AJ's decision. However, the Court admonishes plaintiff that the Court's role is limited to reviewing the AJ's decision, based on the administrative record, as final agency action. This ruling is not an invitation to get a second bite of the apple on issues previously decided by the AJ or engage in discovery. *See id.* §§ 702, 704, 706.

### A. Jurisdiction

To go forward with an APA challenge, a plaintiff must demonstrate a basis for jurisdiction and a waiver of sovereign immunity. *See Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 135 (D.D.C. 2015), *aff'd*, 829 F.3d 754 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 638 (2017) (noting that "the defense of sovereign immunity, if applicable, divests a federal court of

---

[6] "The reviewing court shall—hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

8

jurisdiction over a plaintiff's suit against the sovereign"); *see also Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011). Plaintiff argues that two statutes may serve as sovereign-immunity waivers here—the APA, 5 U.S.C. § 702, and the National Housing Act's ("NHA") sue-and-be-sued clause, 12 U.S.C. § 1702.[7]

Congress waived sovereign immunity for APA "action[s] in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. However, that waiver of sovereign immunity does not apply if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* The D.C. Circuit has interpreted the Tucker Act to impliedly forbid "contract claims against the Government from being brought in district court under the waiver in the APA." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 618–19 (D.C. Cir. 2017) (alteration in original) (citing *Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62, 67–68 (D.C. Cir. 2004)). Defendants argue that plaintiff's challenge to the AJ's decision is essentially a contract action, and therefore, the Court lacks jurisdiction over Count I. (Defs.' Mot. to Dismiss at 6–9.)

To determine whether plaintiff's claim is essentially a contract action this Court must "consider both 'the source of the rights upon which the plaintiff bases its claims' and 'the type of

---

[7] Defendants argue that this Court cannot consider 12 U.S.C. § 1702 as a waiver of their sovereign immunity because plaintiff did not explicitly cite the statute in its complaint. (Sur-Sur-reply Mem. in Further Support of Defs.' Mot. to Dismiss, ECF No. 19, at 2.) But the existence of the statute is an undisputed fact that the Court can consider in reaching its jurisdictional findings. *See Herbert*, 974 F.2d at 197; *see also Trusted Integration, Inc. v. United States*, 679 F. Supp. 2d 70, 79 (D.D.C. 2010) ("Failing to cite the specific section of the statute waiving sovereign immunity is not fatal to a claim against the government."); *Ingram v. Cuomo*, 51 F. Supp. 2d 667, 669–70 (M.D.N.C. 1999) (conducting a sovereign-immunity analysis, referencing both the APA and § 1702, despite the plaintiff's failure to cite the statutes specifically in his challenge to HUD's administrative offset decision).

9

relief sought (or appropriate).'" *Albrecht*, 357 F.3d at 68 (citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). Claims that turn entirely on the terms of a contract will frequently fall under the label of a contract action, whereas statutory or constitutional claims will not. *Id.* at 69; *see also Yee v. Jewell*, 228 F. Supp. 3d 48, 56 (D.D.C. 2017). Claims for monetary relief or specific performance suggest the claim is more like a contract action, whereas other types of relief suggest the opposite. *See Perry Capital LLC*, 864 F.3d at 619–20; *Van Drasek v. Lehman*, 762 F.2d 1065, 1068–69 (D.C. Cir. 1985); *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984).

After examining the relevant factors, this Court finds that plaintiff's claim under Count I is not a disguised contract action insofar as it challenges the AJ's decision. *See Ingram*, 51 F. Supp. 2d at 669 (reaching plaintiff's APA challenge to a HUD offset decision). Plaintiff challenges the AJ's decision, and the concomitant administrative offset, as arbitrary and capricious. (Compl. ¶¶ 49–50.) That decision involves the AJ's interpretation of the Indemnification Agreement and the PSA, but mere reference to a contract does not determine the source of rights upon which a plaintiff relies. *See Perry Capital LLC*, 864 F.3d at 619 ("[W]e do not think that 'any case requiring *some* reference to . . . a contract is necessarily on *the contract* and therefore directly within the Tucker Act'") (alteration in original) (citation omitted). The source of rights upon which plaintiff relies is the statutes and regulations that give HUD the authority to collect administrative offsets and prescribe the way in which HUD may reach decisions about administrative offsets. 31 U.S.C. §§ 3716, 3720A; 24 C.F.R. §§ 17.61, 17.69, 17.73. This source of rights is not contractual. *See Albrecht*, 357 F.3d at 69. Moreover, the requested relief that appears to relate to Count I—setting aside the AJ's decision and enjoining HUD from issuing any administrative offset—represent claims for relief that are not inherently

10

contractual. (Compl. at 14.); *see Perry Capital LLC*, 864 F.3d at 619–20. In short, the APA waives defendants' sovereign immunity insofar as Count I challenges the AJ's decision as arbitrary and capricious.[8]

### B. Count I's Facial Plausibility

Still, to state a facially plausible claim under the APA a plaintiff must be challenging "final agency action for which there is *no other adequate remedy* in a court." 5 U.S.C. § 704 (emphasis added); *Perry Capital LLC*, 864 F.3d at 621.[9] Defendants argue that a separate breach of contract action would provide an adequate remedy. However, crediting defendants' argument would ignore HUD's own regulations and the plain language of the Indemnification Agreement.

Administrative offsets are not readily reviewable in a breach of contract action. Indeed, the very existence of offset proceedings allows HUD to collect what amounts to damages in a contract action without having to participate in a breach of contract action before a court. *See In re DRG Funding Corp.*, No. 94-00417, 2007 WL 2009677, at *5–6 (Bankr. D.D.C. July 5, 2007) (unpublished), *aff'd*, No. 07-cv-1420, 2008 WL 2116434 (D.D.C. May 20, 2008); (*see also* Compl. Ex. F at 9 ("Petitioner is contractually obligated to pay the alleged debt in the amount claimed by the Secretary. . . .[T]he Secretary is authorized to seek collection of this outstanding

---

[8] Concluding as much, the Court need not reach plaintiff's contention that the NHA waives defendants' sovereign immunity, but notes that "other courts have allowed similar suits based on a statutory waiver of immunity that gives an agency the ability to 'sue and be sued.'" *Ingram*, 51 F. Supp. 2d at 670 (noting as much in a challenge to an administrative offset decision from HUD). The NHA, which includes the statutory provisions governing the FHA program at issue here, provides in relevant part that HUD's Secretary, "shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX-B, and X, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1702. Courts liberally construe sue-and-be-sued clauses, "notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

[9] Defendants do not contest that the AJ's decision represents final agency action. *See also* 24 C.F.R. § 17.73.

obligation by means of <u>administrative</u> <u>offset</u> of any federal payment due Petitioner.").)

Moreover, a later breach of contract action cannot adequately remedy an unchallenged administrative offset decision that can have preclusive effect on all dispositive issues. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015); *see also Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 9 (D.C. Cir. 2001).

Furthermore, the Indemnification Agreement does not protect plaintiff from further administrative action if plaintiff fails to pay the administrative offsets. *See* 24 C.F.R. § 25.6. From the beginning of its dealings with plaintiff, defendants have treated its administrative offset proceeding as separate and distinct from a breach of contract action. The Indemnification Agreement itself states "[a]ny material breach of the terms and conditions of this Indemnification Agreement shall constitute *independent* grounds for imposition of administrative sanctions by the Mortgagee Review Board against Mortgagee pursuant to 24 CFR Part 25." (Compl. Ex. A ¶ 2 (emphasis added).) A breach of contract action cannot adequately remedy the threat of costly sanctions for failure to comply with the offset proceeding's ruling, including the possible revocation of plaintiff's approval to originate FHA-insured loans. *See* 24 C.F.R. §§ 25.2, 25.6, 25.8.

Defendants have failed to cite any statute, regulation, or policy that requires plaintiff to further exhaust administrative remedies or renders an offset decision unreviewable by a court. *See* 31 U.S.C. § 3711, *et seq.*; *see also United States v. Hughes*, 813 F.3d 1007, 1010 (D.C. Cir. 2016). If plaintiff does not challenge the AJ's decision now, it will not be able to escape its binding authority later. *See B&B Hardware, Inc.*, 135 S. Ct. at 1303. Thus, recourse is available through review of the AJ's decision. 5 U.S.C. § 704; 24 C.F.R. § 17.73; *Ingram*, 51 F. Supp. 2d at 669–70; *cf. DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1214–15

(D.C. Cir. 1996).

C. **Scope of this Court's Review**

Plaintiff's arbitrary-and-capricious challenge otherwise exhibits facial plausibility insofar as it challenges the manner in which the AJ reached her decision. *See Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012) ("The requirement of reasoned decisionmaking indisputably applies in situations involving judicial review of agency adjudicatory actions."); *see also Neustar, Inc. v. FCC*, 857 F.3d 886, 893 (D.C. Cir. 2017). But given the parties' apparent inability to differentiate between arguments pertaining to Count I and Count II,[10] even after filing a sur-reply and a sur-sur-reply, this Court finds it necessary to clarify its limited scope of review. Count II, and all relief related to an alleged breach of contract by HUD, is dismissed with prejudice. Plaintiff's challenge under the APA only remains cognizable as a claim to the extent it challenges the AJ's decision as arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

The parties are not litigating a breach of contract action before this Court. This action will not include discovery or class certification. After the administrative record is filed, the Court will decide whether the AJ reached her decision in an arbitrary and capricious manner, or otherwise violated an applicable statute or regulation. *See id.* § 702; *Howmet Corp. v. EPA*, 614 F.3d 544, 549 (D.C. Cir. 2010); *Yetiv v. U.S. Dep't of Hous. & Urban Dev.*, 503 F.3d 1087, 1089 (9th Cir. 2007); *see also Am. Wrecking Corp. v. Sec'y of Labor*, 351 F.3d 1254, 1261 (D.C. Cir. 2003). Under well-established principles of administrative law, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463

---

[10] In ruling on the motion, the Court has been challenged in responding to the parties' arguments since the parties fail to delineate between the AJ's decision and other agency actions when discussing jurisdictional and merits issues.

U.S. 29, 43 (1983); *Eagle Broad. Grp., Ltd. v. FCC*, 563 F.3d 543, 551 (D.C. Cir. 2009) (explaining the arbitrary-and-capricious standard); *see also Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 527 (D.D.C. 2016), *appeal dismissed sub nom. Sierra Club v. Jewell*, No. 16-5168, 2016 WL 4098850 (D.C. Cir. July 26, 2016).

## CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that defendants' motion to dismiss with regard to Count II is **GRANTED**, and Count II is dismissed with prejudice; it is further

**ORDERED** that defendants' motion to dismiss with regard to Count I is **DENIED** only to the extent that Count I is a challenge to the AJ's decision; and it is further

**ORDERED** that **by October 11, 2017** the parties will submit a joint briefing schedule that provides dates for the filing of sequential summary judgment motions and the administrative record.

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: September 20, 2017