UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATED MORTGAGE BANKERS, INC., </br></br>    Plaintiff, </br></br> v. </br></br> BEN CARSON, in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, </br></br> and </br></br> U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, </br></br>    Defendants. | Civil Action No. 17-cv-00075 (ESH) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

Of Counsel:

Batina Wills-Washington
Office of General Counsel
U.S. Department of Housing and
Urban Development
batina.wills-washington@hud.gov

CHAD A. READLER
Acting Assistant Attorney General
RUTH A. HARVEY
Director
J. TAYLOR MCCONKIE
Assistant Director
KEVIN P. VANLANDINGHAM
Trial Attorney
NY Reg. No. 4741799
U.S. Department of Justice, Civil Division
P.O. Box 875, Ben Franklin Station
Washington, D.C.  20044-0875
Telephone: (202) 307-1134
Facsimile: (202) 514-9163
kevin.p.vanlandingham@usdoj.gov

ATTORNEYS FOR THE DEFENDANTS

Defendants, the United States Department of Housing and Urban Development and Ben Carson in his official capacity as its Secretary (together, HUD or the Defendants), respectfully oppose Plaintiff's Motion for Leave to File a First Amended Complaint (the Leave Motion). Dkt 22. The proposed amended complaint would not survive a motion to dismiss; thus, allowing the amendment would be futile.

## INTRODUCTION

The claims asserted in Associated Mortgage Bankers, Inc.'s (AMB) proposed amended complaint have either already been resolved by the Court or are subject to dismissal. Two of the four claims in the amendment (Counts II and IV) are simply restated versions of claims made in AMB's original complaint. *See* Dkt 1. Those original claims were fully addressed in and resolved by the Court's recent Opinion and Order on the Defendants' motion to dismiss (the Order). Dkt 33. There is no purpose in amending them now. The other proposed claims (Counts I and III) are entirely new (the New Claims). They were not, however, preserved for this Court's review. The New Claims were not raised in the administrative proceeding below, and are, therefore, not part of the administrative record. AMB had ample opportunity to raise the New Claims to the agency but did not. AMB's failure to do so waived the claims. These unpreserved New Claims would not survive a motion to dismiss; amending the complaint to add them would be futile.[1]

---

[1] Because AMB waived its New Claims, HUD does not at this time address other arguments that may warrant their dismissal, including that the arguments fail to state cognizable claims, but reserves the right to do so at the appropriate time, in motions under Federal Rules of Civil Procedure 12(b) and 56.

## PROCEDURAL BACKGROUND

On September 15, 2017, AMB moved for leave to amend its complaint. Explaining the purpose of its proposed amendment, AMB argued that the "Amended Complaint clarifies or adds more detail with respect to some of the issues raised in HUD's motion filed in response to the original Complaint. It also add (*sic*) two claims which have become apparent due to events transpiring after filing of the original Complaint." Leave Motion at 1–2.

On September 20, 2017, the Court issued its Order granting in part, and denying in part Defendants' motion to dismiss the original complaint. Dkt 23. The Order AMB's claim for breach of the implied covenant of good faith and fair dealing for lack of jurisdiction. Order at 7. The Court then allowed AMB's claim under the Administrative Procedure Act (APA) to proceed to summary judgment, but in doing so, the Court confined the scope of its review to a record review, as follows:

> The parties are not litigating a breach of contract action before this Court. This action will not include discovery or class certification. After the administrative record is filed, the Court will decide whether the AJ reached her decision in an arbitrary and capricious manner, or otherwise violated an applicable statute or regulation.

Order at 13.

## ARGUMENT

### I.  Legal Standard

The Court has discretion to "freely give leave [to amend a pleading] . . . when justice so requires." *In re InterBank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Fed. R. Civ. P. 15(a)(2)). Yet, "[c]ourts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v.*

*Ludwig,* 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also InterBank*, 629 F.3d at 218 ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.").

## II.     AMB's Original Claims Were Resolved By the Court's Order

The Court's Order dismissed AMB's good-faith-and-fair-dealing claim for lack of jurisdiction.  Order at 7.  Because the Court dismissed the claim on jurisdictional grounds, nothing in the proposed amended complaint can change the Court's analysis, which is now law of the case.  AMB is thus barred from re-stating the good-faith-fair-dealing claim in its proposed amended complaint.

Moreover, although the Court sustained AMB's original APA claim, it clarified and limited the scope of review, explaining that it would review the Administrative Judge's decision based on the administrative record under the arbitrary and capricious standard.  Order at 13.  The revisions to the APA claim in AMB's proposed amendment, however, consist almost entirely of new facts and arguments that were not raised during the administrative proceeding below, and are not part of the administrative record.  *See, e.g.*, Proposed Am. Compl. 17–68, 111–122, 159–203.  Because the Court's review is limited to the administrative record, there is no point in including revisions to the original APA claim that are outside of that record.

## III.    AMB's Waived its New Claims

### a.  AMB Failed to Raise its New Claims in the Administrative Proceeding

AMB raises its New Claims for the first time in its proposed amendment.  Its failure to raise them in the administrative proceeding below bars AMB from resurrecting them now.  The bar against raising new issues is "near absolute."  *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) ("There is a near absolute bar against raising new issues – factual or legal – on

appeal in the administrative context."); *see also Delaware v. Surface Transp. Bd.,* 859 F.3d 16, 21, (D.C. Cir. 2017) ("[I]t is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review.") (quoting *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004)); *Coburn v. McHugh*, 679 F.3d 924, 929 (D.C. Cir 2012) (same). The Supreme Court explained the reasoning behind the strict waiver rule: "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). Further, this Court has already recognized that its review of this case will be "narrow" and limited to the administrative record. Order at 13.

The reasoning behind the strict waiver rule applies with full force here. AMB had ample opportunity to raise its New Claims during the administrative proceeding. Indeed, as AMB complains, the "administrative process . . . lasted almost exactly two years." Leave Motion Ex. (Dkt 22-2, the Proposed Am. Compl.) at ¶ 169. AMB sought administrative review on December 17, 2014, and the Administrative Judge ruled on December 16, 2016. Proposed Am. Compl. at ¶¶ 167, 169. During that time, AMB had a right to "present evidence that all or part of the debt is not past due or not legally enforceable." 24 C.F.R. § 17.69(a). The administrative record was supplemented several times throughout the proceedings, including a final supplement in June 2016. Proposed Am. Compl. Ex. 11 (Dkt 22-13, the AJ Decision) at 1.

Despite its extended duration, AMB did not raise its New Claims during the administrative proceeding, even though the New Claims fall within the proceeding's scope of review. In an offset proceeding, regulations require the Administrative Judge to determine

whether a debt "is past due and legally enforceable." 24 C.F.R. § 17.69. Count I of the proposed amended complaint alleges that HUD's failure to conduct formal rulemaking authorizing the Single Family Loan Sale (SFLS) program caused "irreparable harm to AMB and other mortgage lenders who have executed indemnification agreements with HUD." Proposed Am. Compl. ¶ 208. To support this claim, AMB alleges that the "indemnification agreement . . . contemplated that HUD would follow existing regulations, which HUD did not do because the SFLS program was not authorized under HUD regulations." Proposed Am. Compl. ¶ 182. AMB could have raised this rulemaking objection during the administrative proceeding as a challenge to the "legal enforceability" of the indemnification agreement. But AMB did not do so. Nor has AMB alleged that it raised its objection to the agency through any other procedure, including during the 2006 advanced notice of rulemaking and extended comment period. *See* Proposed Am. Compl ¶¶ 42–43. Under the "hard and fast rule of administrative law," AMB's failure to make this argument to HUD precludes it from raising it now. *Delaware, 859 F.3d at 21*.

Similarly, in Count III of its proposed amendment, AMB seeks to raise for the first time an objection to the offset procedures under the Appointments Clause of the U.S. Constitution and 31 U.S.C. § 3716. As argued in our motion to dismiss, if AMB disagreed with HUD's mitigation efforts, it could have filed a breach of contract claim in federal court. *See* Dfs. Mem. at 9 (Dkt 10-1). AMB was not required to first challenge the offset; and thus was not required to avail itself of a hearing before an administrative judge at all. At no point during the voluntary administrative offset proceeding did AMB suggest there was any constitutional defect in the Administrative Judge's appointment, or argue that the debt was not "legally enforceable," *see* 24 C.F.R. § 17.69, because of the type of official presiding over the agency proceeding. AMB did not otherwise object to the offset hearing through any other procedure, including through an

additional 30-day window available to file for reconsideration, which was explicitly described at the end of the AJ Decision. AJ Decision at 9. Just as with its rulemaking objection in Count I, AMB waived the arguments in Count III by failing to raise them with the agency.

That Count III includes a constitutional challenge does not negate AMB's waiver. It is well-settled that a constitutional challenge under the Appointments Clause is "nonjurisdictional" and thus a party may "forfeit[] its [Appointments Clause] argument by failing to raise it." *See Intercollegiate Broadcast Sys. v. Copyright Royalty Bd.*, 574 F.3d 748, 755–56 (D.C. Cir. 2009) *see also GGNSC Springfield LLC v. NLRB*, 721 F.3d 403, 406 (6th Cir. 2013) ("Errors regarding the appointment of officers under Article II are 'nonjurisdictional.'"); *Hill v. SEC*, 825 F.3d 1236, 1245 (11th Cir. 2016) (holding that respondent in Commission proceedings must raise Appointments Clause challenge before the agency in the first instance); *Tilton v. SEC*, 824 F.3d 276, 286 (2d Cir. 2016) (same).

The waiver of the Appointment Clause claim here is similar to the one confronted by the Supreme Court in *L.A. Tucker Truck Lines*. In *L.A. Tucker*, the petitioner sought judicial review of a decision of the Interstate Commerce Commission (ICC). 344 U.S. at 37. In district court, the petitioner argued for the first time that the ICC hearing examiner – i.e., the administrative judge – who had conducted the initial administrative hearing had not been properly appointed under the Administrative Procedure Act (APA). *Id.* at 35. The district court accepted that argument and set aside the ICC's decision. The Supreme Court reversed because the petitioner had never raised the appointment issue before the ICC. Observing that "[t]he issue is clearly an afterthought, brought forward at the last possible moment to undo the administrative proceedings without consideration of the merits," *id.* at 36, the Court held that the appointment issue was forfeited "in the absence of a timely objection" during the administrative proceeding. *Id.* at 38.

Just as in *L.A. Tucker*, AMB's Appointments Clause challenge is an afterthought that was forfeited by AMB's failure to make a timely objection.

The D.C. Circuit's holding in *DRG Funding Corp. v. Sec'y of Hous. and Urban Dev.*, 76 F.3d 1212 (D.C. Cir. 1996), is also instructive. Like this case, the plaintiff in *DRG Funding* argued that "HUD lacked authority to effect an offset." *Id.* at 1213. In that case, the plaintiff *did* raise its argument to the agency; but rather than waiting for the agency's final decision on the issue, the plaintiff filed suit in district court. *Id.* The D.C. Circuit affirmed the district court's dismissal "on the ground that administrative review of the corporation's challenge was not yet final." *Id.* at 1214. The D.C. Circuit explained:

> The [APA] limits nonstatutory judicial review to "final" agency actions. This serves several functions. It allows the agency an opportunity to apply its expertise and correct its mistakes, it avoids disrupting the agency's processes, and it relieves the courts from having to engage in piecemeal review which is at the least inefficient and upon completion of the agency process might prove to have been unnecessary.

*Id.* The holding of *DRG Funding* applies, *a fortiori*, to this case, where AMB did not raise its New Claims to the agency at all, let alone allow for a final agency decision addressing them. AMB's failure to do so precludes it from seeking this Court's review.

The waiver of AMB's New Claims is no mere jurisdictional formality. By failing to argue the New Claims to the agency, AMB deprived HUD an opportunity to create a record documenting the full rulemaking and administrative offset procedures at issue. Further, it denied HUD any chance to address the perceived procedural deficiencies, or to explain why, in HUD's view, its procedures were sufficient. Had AMB raised its New Claims to the agency below, the Court could have addressed AMB's arguments with the benefit of the HUD's reasoning, along with a complete record.

### b. AMB's Proffered Reasons for Delay Do Not Excuse Its Waiver

AMB offers two excuses to explain why it waited to assert its New Claims for the first time in its proposed amended complaint. Even if the "near absolute" waiver could be overlooked, *see Nat'l Wildlife Fed'n v. EPA*, 286 F.3d at 562, AMB's excuses are meritless.

AMB first contends that the Appointments Clause issue raised in Count III of its amendment "bec[a]me apparent" only after the D.C. Circuit's *en banc* ruling in *Raymond J. Lucia Cos. v. SEC*, No. 15-13445, 2017 U.S. App LEXIS 11298 (D.C. Cir. June 26, 2017). Leave Motion at 4. Yet that decision made no ruling at all (and thus made nothing "become apparent"); it instead merely denied rehearing by an even vote, which affirmed the prior decision from the panel at 832 F.3d 277 (D.C. Cir 2016). The panel of the Court heard oral argument on *Raymond J. Lucia Cos.* on May 13, 2016, and issued its decision on August 9, 2016, months before the AJ Decision on December 16, 2016. *Id.*

Further, the same Appointments Clause issue raised in *Raymond J. Lucia Cos.*, was also at issue in other Court of Appeals cases, each litigated while the administrative proceeding in this case was still underway. *See, e.g.*, *Bandimere v. SEC*, 844 F.3d 1168 (10th Cir. 2016) (argued on Sept. 19, 2016, decided on Dec. 27, 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016) (argued on Feb. 24, 2016, decided on June 16, 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016) (argued on Sept. 16, 2015, decided on June 1, 2016); *see also* Peter Henning, Constitutional Challenges to S.E.C.'s Use of In-House Judges, N.Y. Times, Oct. 6, 2015, at p. 2, attached hereto as Ex. A (describing appointments clause issue in recent cases and SEC finding against Raymond J. Lucia Companies). Moreover, the Appointments Clause issue in those cases was not novel; they were resolved based on decades old law, which was available to AMB during the administrative proceedings. *See, e.g.*, *Raymond J. Lucia Cos. v. SEC*, 832 F.3d at (relying on, *inter alia*,

*Buckley v. Valeo*, 424 U.S. 1 (1976), *Freytag v. Commissioner*, 501 U.S. 868, 880 (1991), and *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000)).  AMB could have raised its Appointments Clause argument to HUD before seeking district court review; the *en banc* decision in *Raymond J. Lucia Cos.* provides no excuse for its failure to do so.

      AMB next argues that its delay in asserting Count I of its proposed amendment results from a "Report by the HUD Office of Inspector General ('HUD OIG') issued on July 14, 2017." Leave Motion at 5.  But AMB's proposed complaint relies on publically available resources to allege that HUD provided advanced notice of rulemaking in June 2006, reopened the comment period in September 2006, and then withdrew its proposed rulemaking in March 2007.  Proposed Am. Compl. ¶¶ 35, 43, 44.  AMB also alleges that HUD sold the note at issue in a pooled sale under the SFLS program in September 2013, despite the withdrawal of rulemaking.  *Id.* at ¶ 190. These facts provide the basis for AMB's rulemaking challenge, and each was known or knowable to AMB during the administrative proceeding.  Indeed, the issue of whether regulations prohibited or authorized the pooled sale was a key point in the administrative proceeding.  *See* AJ Decision at 8 (recognizing "non-promulgated regulations or guidance" governing the SFLS sale).  For its part, the HUD OIG report also relies on public facts, principally that rulemaking was not completed, and its own understanding of the applicable legal standards.  Proposed Am. Compl. Ex 2 (HUD OIG Report) at 6.  Further, the HUD OIG Report is only a recommendation, *id.* at 7; it does not bind the agency, nor this Court.  The HUD OIG Report thus offers no excuse for AMB's failure to raise its rulemaking arguments during the administrative proceeding.

## CONCLUSION

For the foregoing reasons, the Court should deny AMB's motion for leave to file its proposed amended complaint.

Respectfully submitted this 29th day of September, 2017.

        CHAD A. READLER
        Acting Assistant Attorney General

        RUTH A. HARVEY
        Director

        J. TAYLOR McCONKIE
        Assistant Director

        *s/ Kevin P. VanLandingham*
        KEVIN P. VANLANDINGHAM
        (NY Reg. No. 4741799)
        Trial Attorney
        U.S. Department of Justice,
        Civil Division
        P.O. Box 875, Ben Franklin Station
        Washington, D.C. 20044-0875
        Telephone: (202) 307-1134
        Facsimile: (202) 514-9163
        kevin.p.vanlandingham@usdoj.gov
        ATTORNEYS FOR THE DEFENDANTS

        Of Counsel:

        Batina Wills-Washington
        Office of General Counsel
        U.S. Department of Housing and
        Urban Development
        batina.wills-washington@hud.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 29, 2017, I electronically filed the foregoing Defendant's Opposition to Plaintiff's Motion for Leave to File a First Amended Complaint with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*s/ Kevin P. VanLandingham*
KEVIN P. VANLANDINGHAM
