UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATED MORTGAGE BANKERS INC., <br><br> Plaintiff, <br><br> v. <br><br> BEN CARSON, *et al.*, <br><br> Defendants. | Civil Action No. 17-0075 (ESH) |

MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff's motion for leave to file a first amended complaint. For the reasons that follow, the Court grants the motion in part and denies the motion in part.

BACKGROUND

I.   FACTUAL BACKGROUND

This suit involves a disagreement about the import of an indemnification agreement ("the Indemnification Agreement") between plaintiff and defendants. Plaintiff Associated Mortgage Bankers, Inc. ("AMB" or "plaintiff") originates mortgage loans, including mortgages that were eligible for insurance under the Fair Housing Act ("FHA") insurance program administered by the Department of Housing and Urban Development ("HUD") and its Secretary, Ben Carson[1] (collectively, "defendants"). (Complaint, Jan. 12, 2017, ECF No. 1, ("Compl.") ¶ 2.) In 2012, in connection with a HUD audit of an individual mortgage loan ("the Loan"), AMB entered into the

---

[1] Under Federal Rule of Civil Procedure 25(d), Ben Carson, the current Secretary of HUD, is automatically substituted as the named defendant for Julian Castro, the former Secretary.

Indemnification Agreement with HUD.[2]  (*Id.* ¶ 9.)

Therein, AMB agreed to indemnify HUD for losses "which have been or may be incurred related" to the Loan in the event of default "up to five years from the loan's date of endorsement."  (*Id.* Ex. A ¶ 1.)  Paragraph 1(a) provides that "[i]n the event of a valid claim for insurance on any of the mortgages covered by this Agreement, indemnification will be in accordance with paragraph (b), (c), (d), or (e), whichever applies."  (*Id.* Ex. A ¶ 1(a).)  Paragraph 1(a) defines HUD's investment and explains that "[t]o the extent HUD recoups any losses . . . or there is any discount on the property . . . HUD will deduct the amount of the recoupment or discount from HUD's Investment."  (*Id.*)

Paragraph 1(b) defines AMB's liability in the event HUD conveys the property to the mortgagee, AMB, and further adds that "[i]f HUD does not convey the property to the Mortgagee, indemnification shall be calculated in accordance with paragraphs (c) or (d) as appropriate."  (*Id.* Ex. A ¶ 1(b).)

Paragraph 1(c) provides in relevant part:

Where a HUD/FHA insurance claim has been paid in full and the property has been sold by HUD to a third party, the amount of indemnification is HUD's Investment as defined in paragraph (a), minus the sales price of the property to be paid in accordance with the terms of an invoice or bill the Department sends to the Mortgagee [AMB].

(*Id.* Ex. A ¶ 1(c).)  Paragraph 1(d) provides in relevant part: "In any other case . . . the mortgagee shall pay HUD the amount of HUD's Investment in accordance with the terms of an invoice or bill the Department sends to the Mortgagee."  (*Id.* Ex. A ¶ 1(d).)

Finally, paragraph 2 states: "Any material breach of the terms and conditions of this

---

[2] According to defendants, AMB agreed to indemnify HUD because a September 2012 review of AMB's lending practices led HUD to discover that AMB had violated the rules and regulations for originating FHA mortgages.  (Defs.' Mot. to Dismiss, May 23, 2017, ECF No. 10, at 3.)

Indemnification Agreement shall constitute independent grounds for imposition of administrative sanctions by the Mortgagee Review Board against Mortgagee pursuant to 24 CFR Part 25." (*Id.* Ex. A ¶ 2.) The Indemnification Agreement does not otherwise limit or define the remedies either party can pursue in the event of breach. (*See id.*)

On September 19, 2013, HUD sold the note for the Loan for $360,531.24—instead of selling the property/collateral for the Loan—through its Single Family Loan Sale ("SFLS") program. (*Id.* ¶¶ 10, 25.) HUD designed the SFLS program to reduce HUD's timelines for carrying costs of properties and to limit HUD's losses. (*Id.* ¶ 11; *id.* Ex. C.) Loans sold in the SFLS pool often garner a lower sales price because of the program's structure. (*Id.* ¶¶ 11–12; *id.* Ex. C.) Indeed, in this instance, HUD only obtained 66% of the Loan collateral's appraised value. (*Id.* ¶ 10.)[3]

"In order to sell notes as part of a bulk sale," HUD executed a Participating Service Agreement ("PSA") with the servicer of the loans, JPMorgan Chase Bank, N.A ("JPMorgan"), pursuant to HUD's statutory and regulatory authorizations. (*Id.* ¶ 14; *id.* Ex. C.) The PSA required JPMorgan to submit an SFLS Claim Submission Report "to HUD after which HUD would advise [Servicer] of those 'Eligible Mortgage Loans' which [Servicer] could include in the pool and subsequently file a claim for insurance." (*Id.* ¶ 14 (alteration in original); *see also id.* Ex. C at 15–16.) The PSA defines "Eligible Mortgage Loans" as, *inter alia*, a mortgage loan that "is not subject to an Indemnification Agreement, or other settlement agreement setting forth specific obligations with respect to Mortgage Loan unless such obligations have been fully

---

[3] The parties dispute the estimate AMB provided for the collateral's appraised value, but at this stage of litigation, the Court accepts AMB's factual allegations as true, giving the property an approximate appraisal value between $530,100 and $550,000 at the time HUD sold the note for the Loan. (Compl. ¶¶ 21, 26.) HUD sold the note attached to the Loan in an SFLS pool to a bidder identified as "SRMOF II 2012-1 Trust." (*Id.* ¶ 10.)

3

satisfied." (*Id.* Ex. C. at 9.) HUD was responsible for screening the SFLS pool for ineligible mortgage loans subject to an indemnification agreement.[4] The Loan was listed on HUD's FHA system as a loan subject to an indemnification agreement, meaning it was not an "Eligible Mortgage Loan" for the bulk sale. (*Id.* ¶ 17; *id.* Ex. D.) Therefore, according to the terms of the PSA, HUD should not have allowed the Loan to be sold as part of the bulk sale.

Almost a year after the sale, on July 28, 2014, AMB received notification that HUD sought $160,448.62 from AMB as insurable losses due under the Indemnification Agreement. (*Id.* ¶ 27.) When AMB objected to the sale, HUD replied that HUD "believe[s] that this debt is both past due and legally enforceable" despite its "acknowledge[ment] that the indemnified loan was erroneously included in a Single Family Loan Sale (SFLS) Program." (*Id.* Ex. E.)

AMB timely requested a hearing with HUD's Office of Hearings and Appeals, and on December 17, 2014, the Administrative Judge ("AJ") "issued a stay pending a final decision on AMB's appeal." (*Id.* ¶ 30.) On December 16, 2016, the AJ issued a Decision and Order on the issue of whether AMB's "debt is past due and legally enforceable pursuant to 24 C.F.R. §§ 17.61 et. seq. . . . in accordance with the procedures set forth in 24 C.F.R. §§ 17.69 and 17.73." (*Id.* Ex. F at 1.) The AJ found that (1) the insurance claim was valid, (2) HUD did not breach the Indemnification Agreement by including the Loan in the SFLS Program bulk sale, (3) HUD did

---

[4] The PSA provides:

> HUD's identification process will be used only to identify mortgage loans submitted as potential SFLS Claims by Participating Servicers and not to screen mortgage loans for eligibility, *with the exception of mortgage loans subject to an Indemnification Agreement*. . . . HUD will not issue an SFLS Claim Identification Date for *any mortgage loans for which Indemnification Agreements* are identified on HUD's system of records.

(Compl. Ex. C. at 16) (emphasis added).

not act in contravention of its own internal guidance when it failed to abide by the terms of the PSA, and (4) the sale of the Loan through the SFLS Program did not violate the implied covenants of good faith and fair dealing in the Indemnification Agreement between AMB and HUD.  (*Id.* Ex. F at 3–9.)  Accordingly, the AJ vacated the stay and authorized the collection of the "outstanding obligation by means of administrative offset of any federal payment due." (*Id.* Ex F at 9.)

## II.     PROCEDURAL HISTORY

On January 12, 2017, AMB filed its first complaint requesting that the Court (1) set aside the AJ's decision as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law in violation of the Administrative Procedure Act ("APA"); (2) declare HUD to be in breach of the Indemnification Agreement; (3) enjoin HUD from issuing any administrative offset or referring the debt to Treasury for collection; (4) certify this matter as a class action with AMB representing a class of similarly-situated lenders; (5) issue a preliminary injunction restraining HUD and its agents from taking action against AMB or the proposed class; and (6) award AMB attorney's fees and expenses, as well as granting any other proper relief.  AMB pleaded two counts in support of its requested relief: (1) violation of the APA, 5 U.S.C. § 706(2)(A), ("first APA claim") and (2) breach of the covenant of good faith and fair dealing ("first contract claim").  (*Id.* ¶¶ 47–56.)  On May 23, 2017, defendants moved to dismiss for lack of jurisdiction and for failure to state a claim.

On September 15, 2017, plaintiff moved to amend its first complaint, seeking to plead additional facts regarding its original claims. (Pl.'s Mot. for Leave to File a First Am. Compl., Sept. 15, 2017, ECF No. 22, ("FAC Mot."); Proposed First Am. Compl., Sept. 15, 2017, ECF No. 22-2, ("Proposed FAC").)  Plaintiff also seeks to add two new legal claims.  According to

plaintiff, the basis for the two new legal claims became "apparent due to events subsequent to filing of the original complaint." (FAC Mot. at 4.)

First, plaintiff wants to add a claim that defendants violated the APA by failing to promulgate rules governing the SFLS program and related programs by notice and comment, 5 U.S.C. §§ 553, 706 ("notice-and-comment claim"). (Proposed FAC ¶¶ 204–08.) Plaintiff bases its notice-and-comment claim on a July 14, 2017 Report from the HUD Office of the Inspector General ("HUD OIG") that criticized "HUD [for] not conduct[ing] rulemaking or develop[ing] formal procedures for its [SFLS] program. In 2006, HUD started but did not complete rulemaking for its note sales program. . . . HUD did not finalize the comment process or prepare the program for a final rule." (*Id.* Ex. 2 at 5.) The Report recommended that HUD complete the rulemaking process because "public officials, citizens, and industry participants were not given the opportunity to provide comments for a more than $18 billion program. Additionally, with no formal procedures or guidebooks, HUD lacked a consistent standard for administering its program." (*Id.* Ex. 2 at 6; *see also id.* Ex. 2 at 7.)

Second, plaintiff seeks to add a claim that HUD's AJs are inferior officers not appointed in accordance with the U.S. Constitution's Appointment Clause, U.S. Const. Art. II § 2 cl. 2, and thus, HUD violated the Constitution and the statute governing administrative offsets by failing to provide review by a person within the agency legally allowed to do so ("Appointments Clause claim"). (Proposed FAC ¶¶ 217–24.)[5] Plaintiff bases its Appointments Clause claim on the June 26, 2017 en banc denial of a petition for review in *Raymond J. Lucia Companies, Inc. v. SEC*,

---

[5] Although plaintiff enumerates the notice-and-comment claim as the new Count I, and the Appointments Clause claim as the new Count III, the Court refers to them as the notice-and-comment claim and Appointments Clause claim to avoid confusion with former Count I (the first APA claim) and Count II (the covenant of good faith contract claim).

868 F.3d 1021 (D.C. Cir. 2017) (per curiam).  This denial let stand a panel decision from August 9, 2016, which found that SEC administrative law judges ("ALJs") were not officers within the meaning of the Appointments Clause of the U.S. Constitution.  *Raymond J. Lucia Companies, Inc. v. SEC*, 832 F.3d 277, 289 (D.C. Cir. 2016).[6]

On September 20, 2017, before ruling on plaintiff's motion for leave to file an amended complaint, the Court issued a Memorandum Opinion on defendants' motion to dismiss.  (ECF No. 23 ("MTD Op.").)  The Court dismissed with prejudice plaintiff's first contract claim as within the Tucker Act's exclusive jurisdiction.  (*Id.* at 7–8.)  The Court also denied defendants' motion to dismiss as to plaintiff's first APA claim challenging the AJ's administrative offset decision.  However, the Court noted that its review on the first APA claim going forward would be confined to that issue: "This action will not include discovery or class certification.  After the administrative record is filed, the Court will decide whether the AJ reached her decision in an arbitrary and capricious manner, or otherwise violated an applicable statute or regulation."  (*Id.* at 13.)

On September 28, 2017, plaintiffs filed a motion for reconsideration of the Court's Memorandum Opinion.  On November 15, 2017, the Court issued an opinion denying plaintiff's motion, with the exception that it clarified that its dismissal of the contract claim for lack of jurisdiction was without prejudice to refiling in the Court of Federal Claims.  (ECF No. 32 ("Recons. Op.") at 6–7.)

The Court is now ready to rule on plaintiff's motion for leave to file an amended

---

[6] *Lucia* created a circuit split with the 10th Circuit's decision in *Bandimere v. SEC*, 844 F.3d 1168 (10th Cir. 2016), which held that SEC ALJs are inferior officers within the meaning of the Appointments Clause.  *Id.* at 1179.  There is a petition for a writ of certiorari pending before the Supreme Court in *Lucia* and *Bandimere*.

complaint. (Pl.'s Mot. to Amend Compl., Sept. 15, 2017, ECF No. 22.)

## ANALYSIS

I. **LEGAL STANDARD**

"Rule 15(a)(2) instructs district courts to 'freely give leave [to amend a pleading] when justice so requires." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Fed. R. Civ. P. 15(a)(2)). "Under Rule 15(a), the nonmovant"—in this case, HUD—"generally carries the burden in persuading the court to deny leave to amend." *Dove v. Washington Metro. Area Transit Auth.*, 221 F.R.D. 246, 247 (D.D.C. 2004); *see also City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 6 (D.D.C. 2008).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Barkley v. U.S. Marshals Serv.*, 766 F.3d 25, 38 (D.C. Cir. 2014) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

Delay, prejudice, and futility can justify a denial of a request to amend. "To determine what is 'undue delay,' the parties' conduct in the litigation and the possibility of resulting prejudice should be considered." *City of Moundridge*, 250 F.R.D. at 6. "Undue prejudice is not mere harm to the non-movant but a denial 'of the opportunity to present facts or evidence which [ ] would have [been] offered had the amendment[ ] been timely.'" *Dove*, 221 F.R.D. at 248 (alteration in original) (citing *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, No. 82-cv-0220, 1988 WL 122568, at *4 (D.D.C.1988) (unpublished), *aff'd*, 905 F.2d 438 (D.C.Cir.1990)). As to futility, a district court may deny a motion for leave to amend "if the amended pleading

would not survive a motion to dismiss." *In re Interbank Funding*, 629 F.3d at 218; *see also James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

## II.     FIRST CONTRACT CLAIM

The Court will deny, as futile, plaintiff's request for leave to amend the complaint to include the first contract claim or add any allegations related to the first contract claim. As explained in the Court's two prior opinions in this case, the Court does not have jurisdiction over this claim. (MTD Op. at 7–8; Recons. Op. at 3–6.) Plaintiff argues that filing an amended complaint without the first contract claim would allow defendants to argue that plaintiff dropped or waived that claim in any later suit or appeal, but as noted in the Court's last opinion, plaintiff remains free to file this claim in the Federal Court of Claims. (Recons. Op. at 6–7.) Accordingly, the Court will strike Count IV of the proposed amended complaint, for it will not reverse its prior rulings as to this count.

## III.    NOTICE-AND-COMMENT CLAIM

Plaintiff wishes to add allegations related to HUD's rulemaking requirements under the APA. (Proposed FAC ¶¶ 17–47, 182–85, 191–94, 204–08.) Plaintiff's notice-and-comment claim can be roughly distilled as follows: (1) HUD had no regulation or unified policy publically promulgated on how to implement the SFLS program and related programs, (2) HUD was required to go through notice-and-comment procedures to promulgate policies for these programs, and (3) HUD's failure to do so resulted in the erroneous sale of the note at issue in this case. (*See, e.g.*, Proposed FAC ¶ 194 ("If HUD had adopted a valid regulation and had a clear, unified set of policies, procedures, and rules with respect to implementation of the SFLS program, HUD and HUD OIG would likely have been aware earlier that loans subject to indemnification agreements were not supposed to be part of the SFLS program.")).

9

Defendants oppose this amendment arguing that allowing plaintiff to add such a claim is unwarranted because (1) any amendment would be futile on waiver and exhaustion grounds due to plaintiff's failure to bring this claim before the agency, *see, e.g.*, *Hettinga v. United States*, 560 F.3d 498, 502 (D.C. Cir. 2009), and (2) plaintiff unduly delayed raising this claim.

Defendants suggest that plaintiff should have raised its notice-and-comment concerns in June 2006 during a proposed rulemaking that HUD later withdrew in March 2007. (*See* Proposed FAC ¶¶ 33–45.)  The Court cannot follow the logic of defendants' argument. While the rulemaking was ongoing, plaintiff had no reason to comment that HUD should be promulgating policies by notice and comment, and plaintiff had no agency rulemaking process in which to file a comment after HUD withdrew the notice of proposed rulemaking.

Defendants also argue that plaintiff should have raised its notice-and-comment claim before the AJ, and its failure to do so constitutes waiver of that claim.  However, waiver only applies if plaintiff could have presented its notice-and-comment claim before the AJ in the first instance.  *See CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1079 (D.C. Cir. 2009). Defendants do not cite any regulations or policies showing that a HUD AJ can consider such a claim, and HUD regulations on the AJ's review limit that review to questions concerning whether "there is a debt that is past due and whether it is legally enforceable." 24 C.F.R. § 17.69(c); *see also id.* § 17.73; *cf. Hous. Study Grp. v. Kemp*, 739 F. Supp. 633, 638 (D.D.C. 1990) (requiring plaintiffs to exhaust administrative remedies before HUD where "HUD's regulations provide[d] plaintiffs with an administrative remedy").

The doctrines of exhaustion and waiver in the administrative context involve complex inquiries concerning whether a statute, regulation, or other promulgated agency policy requires exhaustion of remedies, and whether failure to exhaust precludes court review.  *See Hettinga*,

10

560 F.3d at 502–03; *see also Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 704 (D.C. Cir. 2009). Defendants have not specifically identified any statute or regulation requiring plaintiff to exhaust a notice-and-comment claim before the HUD AJ, and instead, they have only cited precedent regarding general principles of waiver and exhaustion. Without more, the Court cannot conclude that granting plaintiff leave to amend its complaint to include a notice-and-comment claim would be futile on the grounds of exhaustion or waiver. *See Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (noting that the APA "has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates."); *see also CSX Transp.*, 584 F.3d at 1079; *DSE, Inc. v. United States*, 169 F.3d 21, 27 (D.C. Cir. 1999).

Defendants' undue-delay argument seems to be intertwined with its exhaustion argument, but to the extent that it is not, defendants fail to clearly articulate a standalone undue-delay argument that justifies the denial of leave to amend. "Courts that have found an undue delay in filing have generally confronted cases in which the movants failed to promptly allege a claim for which they already possessed evidence." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013). Plaintiff alleges that its notice-and-comment claim arises from the HUD OIG Report issued on July 14, 2017. (FAC Mot. at 5; Proposed FAC Ex. 2 & ¶¶ 56–59, 192–94.) Plaintiff filed its motion for leave to amend exactly two months and one day later, before the Court had ruled on any dispositive motions, and most significantly, defendants fail to explain how such a short delay prejudices them. *See United States ex rel. Westrick*, 301 F.R.D. 5, 9 (D.D.C. 2013); *see also Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 79 (D.D.C. 2009).

## IV. APPOINTMENTS CLAUSE CLAIM

Plaintiff also seek to add allegations related to the constitutionality of HUD's AJs under the Appointments Clause. U.S. Const. Art. II § 2 cl. 2 (Proposed FAC ¶¶ 159–66, 217–224.) Defendants argue that plaintiff should have exhausted this claim before the AJ, but this argument fails for the reasons outlined above in Part III—defendants have not cited any statute, regulation, or policy requiring plaintiff to exhaust such a claim before the AJ. *See Darby*, 509 U.S. at 146; *CSX Transp., Inc.*, 584 F.3d at 1079. Moreover, the Court is even more hesitant to conclude as a matter of law that plaintiff must exhaust a *constitutional* claim before an AJ that challenges that AJ's very authority. *See, e.g.*, *Freytag v. C.I.R.*, 501 U.S. 868, 878–79 (1991).[7]

Defendants' arguments about undue delay also fail for reasons similar to those outlined in Part III. The Court recognizes that plaintiff could have raised the Appointments Clause claim in its first complaint since the panel decision in *Lucia*, which plaintiff relies on as persuasive authority, was issued over five months before plaintiffs filed their first complaint on January 12, 2017. However, defendants do not explain what prejudice would result from allowing an amendment to add this claim, for "an amendment is not automatically deemed prejudicial [just because] it causes the non-movant to expend additional resources." *United States ex rel. Westrick*, 301 F.R.D. at 9; *see also Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004) ("In the District of Columbia, a court cannot deny leave to amend solely on the time elapsed between the filing of the pleading and the request for leave to amend."). This case is still in its early stages, and the Appointment Clause claim presents an essentially legal issue. If plaintiff's claim

---

[7] Defendants cite cases purporting to establish that a constitutional challenge under the Appointments Clause is non-jurisdictional and can be waived or forfeited, but plaintiff satisfactorily distinguishes these cases so as to avoid a finding that an amendment to add such a claim would clearly be futile. (*See* Pl.'s Reply in Supp. of Mot. for Leave to File a First Am. Compl., Oct. 6, 2017, ECF No. 27, at 6–9.)

has merit, the Court should have the opportunity to consider it before assessing the lawfulness of the AJ's decision under the APA. 5 U.S.C. § 706(2)(A); *see also Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000) ("*Freytag* itself indicates that judicial review of an Appointments Clause claim will proceed even where any possible injury is radically attenuated.").

## CONCLUSION

The Court will grant plaintiff leave to amend its complaint to add factual allegations related to the first APA claim, the notice-and-comment claim, and the Appointments Clause claim. However, nothing in this opinion should be read as prejudging the merits of plaintiff's notice-and-comment claim or Appointments Clause claim for purposes of a motion to dismiss. Plaintiff's motion for leave to amend, ECF No. 22, is **DENIED IN PART** to the extent that plaintiff may not include its first contract claim, which this Court has already dismissed without prejudice to refiling in the Court of Federal Claims, and thus, Count IV of the proposed amended complaint is stricken. Plaintiff's motion for leave to amend, ECF No. 22, is **GRANTED IN PART** to the extent that plaintiff's amended complaint (minus Count IV) will be treated as filed this date. Defendants shall file their responsive pleading consistent with Federal Rule of Civil Procedure 15 and D.C. Local Civil Rule 7(n), on or before **December 15, 2017**.

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: December 1, 2017