UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATED MORTGAGE BANKERS, INC.,<br><br>    **Plaintiff**,<br><br>    v.<br><br>BEN CARSON, *et al.*,<br><br>    **Defendants.** | Civil Action No. 17-0075 (ESH) |

## MEMORANDUM OPINION

Defendants have filed a partial motion to dismiss plaintiff's amended complaint, or, in the alternative, to remand to the administrative agency. For the reasons set forth below, the Court grants the motion to remand in part and grants the motion to dismiss in part. The Court also enters judgment on plaintiff's behalf on its Appointments Clause claim (Count III). As a remedy, the Court vacates the December 16, 2016 decision and order by the U.S. Department of Housing and Urban Development ("HUD") Administrative Judge and remands to HUD for a new hearing before a different official appointed in accordance with the Appointments Clause of the U.S. Constitution. The Court dismisses plaintiff's two remaining claims (Counts I and II) as moot.

## BACKGROUND

### I. FACTUAL BACKGROUND

Plaintiff Associated Mortgage Bankers, Inc. ("AMB") is a New York company that originates mortgage loans. (Am. Compl. ¶¶ 1–2, ECF No. 34.) Some of those mortgages are

eligible to be insured by defendant HUD's Federal Housing Administration ("FHA") insurance program. (*Id.* ¶ 2.) The FHA insures mortgage loans made by FHA-approved lenders for single family and multifamily homes. (*Id.* ¶¶ 10–11.)

One of the FHA-insured loans originated by AMB (the "Loan") became the subject of a HUD audit, which resulted in AMB and HUD entering into an Indemnification Agreement on December 10, 2012. (*Id.* ¶ 69.) HUD's audit had identified AMB lending practices that did not comply with FHA standards, thereby increasing the risk that the Loan would default; the Indemnification Agreement was signed to address this increased risk to HUD. (Decision of Administrative Judge at 2, Ex. 11 to Am. Compl., ECF No. 34-11.) Under the terms of the Indemnification Agreement, AMB "agree[d] to indemnify HUD for losses which have been or may be incurred related to the FHA Case Number 374-5838647 [the 'Loan']." (Indemnification Agreement ¶ 1, Ex. 3 to Am. Compl., ECF No. 34-3.)

As part of its Single Family Loan Sales ("SFLS") program, HUD sold the note for the Loan for $360,531.24 in September 2013. (Am. Compl. ¶¶ 77, 92, 190.) AMB asserts that this only constituted 66% of the value of the collateral associated with the Loan. (*Id.* ¶ 128.) AMB represents that the property underlying the Loan was valued at somewhere between $530,100 and $550,000 at the time of the note's sale. (*Id.* ¶¶ 79–80.)

SFLS is the name for a HUD program that, at an earlier time, was titled Accelerated Claim Disposition ("ACD"). (*Id.* ¶¶ 22–23.)[1] The program originated in February 2002, when HUD issued a "Notice of FHA Accelerated Claims Disposition Demonstration" (the "February 2002 Notice"). (*Id.* ¶ 24 (citing 67 Fed. Reg. 5,418 (Feb. 5, 2002)).) The February 2002 Notice

---

[1] In addition to SFLS and ACD, the program has also been referred to as: Accelerated Claim and Asset Disposition, Single Family Joint Venture Loan Sales, Single Family Mortgage Acquisition and Recovery Initiative, and Distressed Asset Stabilization Program. (Am. Compl. ¶ 23.)

requested comments regarding a proposed program under which "HUD would pay accelerated claims on certain defaulted FHA-insured mortgages." (Am. Compl. ¶¶ 24–25 (quoting 67 Fed. Reg. at 5,418).)

After a comment period, HUD published a final "Notice of FHA Accelerated Claims Disposition Demonstration" in October 2002, formally establishing the program (the "October 2002 Notice"). (Am. Compl. ¶ 26 (citing 67 Fed. Reg. 66,038 (Oct. 29, 2002)).) The October 2002 Notice specified that the program would be limited in duration and geographic scope. 67 Fed. Reg. at 66,040. It further stated that "[o]nly certain defaulted FHA-insured loans are eligible for the accelerated claim payment process." *Id.* Among the restrictions on eligible loans was the requirement that "[t]o the knowledge of the participating mortgagee, the mortgage loan is not subject to an Indemnification Agreement as of the provisional claim approval date." *Id.* at 66,041.

In June 2006, HUD publicly contemplated making the ACD program permanent. (Am. Compl. ¶¶ 35–36.) It published an Advance Notice of Proposed Rulemaking, seeking comments before proceeding to issue a proposed rule that would establish the program's permanence. (*Id.* (citing 71 Fed. Reg. 32,392 (June 5, 2006)).) This proposed rulemaking was withdrawn in March 2007, and HUD has not initiated a new rulemaking process regarding the ACD program since that time. (Am. Compl. ¶¶ 44–45.) However, HUD has continued the program. HUD asserts in its motion—without any citation in support—that "HUD's decision to withdraw the June 2006 [Advance Notice of Proposed Rulemaking] reflects the agency's decision to continue the ACD Demonstration while retaining the flexibility to modify the procedures used." (HUD Memo. in Support of Mot. to Dismiss or Remand ("HUD Mot.") at 21, ECF No. 46-1.)

When HUD sold the note for the Loan in 2013 as part of the SFLS program, it did so in a bulk sale of over two thousand notes. (Am. Compl. ¶¶ 83–84.) JPMorgan Chase Bank, N.A. ("JP Morgan"), the loan servicer, had entered into a Participating Servicer Agreement ("PSA") with HUD in connection with this bulk sale. (*Id.* ¶¶ 104–05.) The PSA provided that HUD would pay JP Morgan's insurance claims for "Eligible Mortgage Loan[s]." (*Id.* ¶ 106.) Part of the definition of an "Eligible Mortgage Loan" in the PSA was that "the Mortgage Loan is not subject to an Indemnification Agreement." (*Id.* ¶ 107; PSA at 9, Ex. 6 to Am. Compl., ECF No. 34-6.)

JP Morgan made an insurance claim on the Loan in August 2013 in the amount of $520,979.86. (Am. Compl. ¶ 114.) HUD paid this claim to JP Morgan on August 10, 2013, having "failed to screen out the Loan as ineligible for an insurance claim [under the terms of the PSA] due to the presence of the Indemnification Agreement." (*Id.* ¶¶ 116–17.)

On July 28, 2014, HUD sent AMB a demand notice seeking to recoup the $160,448.62 difference between the amount HUD paid in the insurance claim and what it received in the sale of the note for the Loan. (*Id.* ¶ 145.) On October 13, 2014, HUD issued a notice indicating its intent to collect the amount via an administrative offset. (*Id.* ¶ 147.)[2] AMB disputed the debt. In response, HUD sent a December 8, 2014 letter in which it "acknowledge[d] that the indemnified loan was erroneously included" in the SFLS program, but asserted that "this event did not impact on the legal enforceability of the Indemnification Agreement." (Dec. 2014 Letter, Ex. 10 to Am. Compl., ECF No. 34-10.)

---

[2] An "'administrative offset' means withholding funds payable by the United States . . . to, or held by the United States for, a person to satisfy a claim." 31 U.S.C. § 3701(a)(1).

HUD regulations provide that "[a] debtor who receives notice of intent to offset . . . has the right to a review of the case" by an Administrative Judge ("AJ") of the HUD Office of Appeals "and to present evidence that all or part of the debt is not past due or not legally enforceable." 24 C.F.R. §17.69(a). In accordance with this regulation, AMB filed an appeal with HUD's Office of Appeals regarding the administrative offset sought by HUD. (Am. Compl. ¶ 167.)

Before HUD AJ Vanessa L. Hall, AMB argued that it was not obligated to pay the alleged debt because 1) the mortgage insurance claim paid was not valid; 2) HUD breached the Indemnification Agreement by negligently including the Loan in the SFLS program; 3) HUD acted in contravention of its internal guidance; and 4) HUD violated the Indemnification Agreement's implied covenant of good faith and fair dealing. On December 16, 2016, the AJ issued a decision rejecting each of AMB's arguments and concluding that the debt was legally enforceable against AMB. (Decision of AJ at 3–9.)

## II. PROCEDURAL HISTORY

On January 12, 2017, AMB filed suit against HUD and its Secretary (collectively referred to herein as "HUD"). AMB's initial complaint brought two claims: 1) an arbitrary-and-capricious challenge under the Administrative Procedure Act ("APA") to the AJ's decision, and 2) a claim that HUD breached the Indemnification Agreement's implied covenant of good faith and fair dealing. (Compl. ¶¶ 47–56, ECF No. 1.) HUD filed a motion to dismiss, which was granted with respect to the implied covenant claim based on a lack of subject matter jurisdiction. *Associated Mortg. Bankers, Inc. v. Carson*, 279 F. Supp. 3d 58, 64 (D.D.C. 2017). The Court denied HUD's motion to dismiss the APA challenge to the AJ's decision, concluding that the claim was facially plausible. *Id*.

5

On September 15, 2017, AMB filed a motion to amend its complaint. (Mot. for Leave to File First Am. Compl., ECF No. 22.) AMB's Amended Complaint alleged the following claims: 1) HUD had violated the APA by failing to utilize notice-and-comment rulemaking for its longstanding SFLS program (Count I); 2) HUD had violated the APA because its AJ's decision was arbitrary and capricious (Count II); 3) the HUD AJ's appointment violated the U.S. Constitution's Appointments Clause (Count III); and 4) HUD had breached the Indemnification Agreement's covenant of good faith and fair dealing (Count IV). (Am. Compl. ¶¶ 204–31.)

Counts I and III stated new claims not previously contained in AMB's original complaint. In support of Count I's new notice-and-comment claim, AMB pointed to a July 2017 report issued by the HUD Office of Inspector General (the "HUD OIG Report"), which found that "HUD did not conduct rulemaking or develop formal procedures for its single-family note sales program." (HUD OIG Report at 5, Ex. 2 to Am. Compl., ECF No. 34-2.) The HUD OIG Report explained that "[w]hen HUD expanded its notes sales to a nationwide level, it did so without a formal plan to transition from a demonstration to an official program." (*Id.* at 6.) The Report recommended that "[b]ecause HUD already operates its note sales nationwide, it should complete the rulemaking process." (*Id.*) HUD wrote a response letter indicating that it agreed with the Report's recommendations. (*Id.* at 10–11; Am. Compl. ¶ 59.)

AMB's second new claim, found in Count III, alleged that HUD AJs are inferior officers within the meaning of the Appointments Clause of the U.S. Constitution. (Am. Compl. ¶ 220.) AMB argued that HUD had not complied with the Appointments Clause's requirements regarding who may appoint an inferior officer, and thus the AJ's decision contravened the U.S. Constitution. (*Id.* ¶¶ 221–22.)

The Court granted in part and denied in part AMB's motion for leave to amend its complaint. *Associated Mortg. Bankers, Inc. v. Carson*, No. 17-cv-0075, 2017 WL 6001733, at *1 (D.D.C. Dec. 1, 2017). The Court struck the breach of the covenant of good faith and fair dealing claim (Count IV) since that claim had already been dismissed in the Court's prior ruling. *Id.* at *4. The Court permitted the rest of AMB's proposed amendments to its complaint. *Id.* at *6.

On August 15, 2018, HUD filed the present partial motion to dismiss Counts I and III of the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, to remand the case for a new hearing before a duly appointed AJ and dismiss the Amended Complaint in its entirety. (HUD Mot. to Dismiss or Remand at 1–2, ECF No. 46.)

## ANALYSIS

The Court's analysis will begin with Count III, AMB's Appointments Clause claim, as the Court's ruling on this count alters the analysis of AMB's other claims. HUD's motion seeks to dismiss this claim, or, in the alternative, to remand the case to a duly appointed AJ. (HUD Mot. at 1, 12.) As explained herein, the Court will not dismiss this claim but will remand to the agency. The Court will then proceed to Counts I and II to determine if it has subject matter jurisdiction over these remaining claims given its ruling on Count III. The Court concludes that it lacks jurisdiction, and it will therefore dismiss Counts I and II without prejudice.

### I.     LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. In addressing a Rule 12(b)(1) motion, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). Mootness is an issue of subject matter jurisdiction, and it is properly addressed under a Rule 12(b)(1) motion or *sua sponte* by the Court. *See Cierco v. Lew*, 190 F. Supp. 3d 16, 22–23 (D.D.C. 2016).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserts that a defendant has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Where an agency moves for remand, "[t]he decision whether to grant an agency's request . . . is left to the discretion of the court." *Code v. McHugh*, 139 F. Supp. 3d 465, 468 (D.D.C. 2015). Granting an agency's remand request is often appropriate where there is new evidence, where intervening events have affected the validity of the agency's actions, or where an agency has raised "'substantial and legitimate' concerns in support of remand." *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015); *see also Code*, 139 F. Supp. 3d at 468. Courts "should deny an agency's request to remand where the request is 'frivolous or in bad faith.'" *Code*, 139 F. Supp. 3d at 468 (quoting *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 23 (D.D.C. 2008)).

## II.  COUNT III: APPOINTMENTS CLAUSE CLAIM

The Appointments Clause of the U.S. Constitution specifies, in relevant part, that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Count III of AMB's Amended Complaint argues that the Administrative Judge, who decided its case at the HUD Office of Appeals on December 16, 2016, was an inferior officer

8

within the meaning of the U.S. Constitution's Appointments Clause. And, because the HUD AJ was not appointed by the President, a court of law, or a head of a department, AMB argues that her appointment was unconstitutional. (Am. Compl. ¶¶ 217–24.)

HUD does not dispute the merits of this claim in light of the Supreme Court's recent decision in *Lucia v. Securities & Exchange Commission*, 138 S. Ct. 2044 (2018), where the Court held that administrative law judges at the Securities and Exchange Commission ("SEC") are inferior officers of the United States within the meaning of the Appointments Clause. *Id.* at 2049. The Court reasoned that the judges held "a continuing office established by law" and exercised "significant discretion when carrying out . . . important functions." *Id.* at 2053 (internal citation and quotation marks omitted). HUD concedes that its AJs sufficiently mirror the characteristics of the SEC's administrative law judges such that they too are inferior officers within the meaning of the Appointments Clause. (HUD Mot. at 2.)

HUD argues that the Court should nonetheless dismiss AMB's Appointments Clause claim because AMB forfeited the claim by failing to raise it before the agency. (*Id.* at 8; HUD Reply at 4, ECF No. 49 ("It is well-established that a party generally may not challenge an agency decision on a basis that was not presented to the agency.") (quoting *In re DBC*, 545 F.3d 1373, 1378 (Fed. Cir. 2008)). In support of its argument, HUD cites to the Supreme Court's statement in *Lucia* that "'one who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Lucia*, 138 S. Ct. at 2055 (emphasis added) (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)). *Lucia* did not define the scope of what constitutes a timely challenge, as there was no claim in *Lucia* that the challenge to the appointment of the SEC's administrative law judge—advanced for the first time on appeal to the SEC—was not timely raised. *Lucia*, 138 S. Ct. at 2050, 2055.

9

The Court here need not attempt to define what constitutes a timely challenge such that a party would be "*entitled* to relief," *id.* at 2055 (emphasis added), for, as HUD concedes, courts have *discretion* to grant relief to an untimely challenger with an Appointments Clause claim. (HUD Reply at 8 (citing *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 879 (1991)).) The Supreme Court has "expressly included Appointments Clause objections to judicial officers in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Freytag*, 501 U.S. at 878–79 (citing *Glidden Co. v. Zdanok*, 370 U.S. 530 (1962)). In *Freytag* (on which the Supreme Court heavily relied in *Lucia*) the Court utilized its discretion to reach an Appointments Clause claim that was raised for the first time in the Fifth Circuit. *Freytag*, 501 U.S. at 871–82, 878–80 ("We conclude that this is one of those rare cases in which we should exercise our discretion to hear petitioners' challenge"); *see also Lucia*, 138 S. Ct. at 2053. The *Freytag* Court justified its use of discretion by explaining the importance of the Appointments Clause in "maintaining the constitutional plan of separation of powers" and that "[t]he structural interests [it] protect[s] . . . are not those of any one branch of Government but of the entire Republic." *Freytag*, 501 U.S. at 879–80. Applying *Freytag*'s rationale, this Court will utilize its discretion to reach the Appointments Clause claim.

This case is particularly well-suited for the Court to exercise its discretion because the policy rationales underlying the waiver rule—"development of a factual record, the application of agency expertise, [and] the exercise of administrative discretion"—are inapplicable. *See R.R. Yardmasters of Am. v. Harris*, 721 F.2d 1332, 1338–39 (D.C. Cir. 1983). Where these policy rationales are absent, "judicial review" is less likely to be "hindered by the failure of the [party] to raise its challenge before the [agency]." *See id.*

The refrain that parties ought to present issues to an agency before seeking judicial review is analogous to the general rule that appellate courts should not consider arguments not raised before the district court. *See Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1148 (D.C. Cir. 2005). Yet, the D.C. Circuit has found it appropriate to address issues not raised before the district court where the claim is "is one of law, requires no further factual development, has been fully briefed by both parties, and can be resolved beyond any doubt." *R.R. Yardmasters*, 721 F.2d at 1337; *see also Ass'n of Am. R.R. v. U.S. Dep't of Transp.*, 821 F.3d 19, 26 (D.C. Cir. 2016) (reaching a claim not raised below where it was of "purely legal character," had been fully briefed, and pertained to "significant structural constitutional rights"). On the other hand, the D.C. Circuit has been reluctant to review a last-minute Appointments Clause challenge that did not have the benefit of "thorough, considered briefing from all interested parties," as this could cause a Court to "run the risk of [issuing] an improvident or ill-advised opinion on the legal issues tendered." *Intercollegiate Broadcast Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 755–56 (D.C. Cir. 2009) (internal quotation marks and citation omitted) (holding it was "certainly" within the D.C. Circuit's power to consider plaintiff's Appointments Clause challenge first raised in a supplemental brief to the Circuit, but declining to do so given the "potential for far-reaching consequences" of finding an Appointments Clause violation in the circumstances presented).

Given this framework, review of AMB's Appointments Clause claim is appropriate in this case. The development of a further factual record at the agency level would have been of no assistance to the Court in deciding the Appointments Clause issue as it is a purely legal claim, and since it is a constitutional question, there is no reason to defer to agency expertise or discretion. Moreover, given the parties' agreement that AMB's claim is unquestionably

11

meritorious in light of *Lucia*, there is no plausible concern that AMB's delay in raising the argument could hinder this Court's ability to decide the Appointments Clause claim or could cause the Court to issue an ill-advised opinion on the merits. *See R.R. Yardmasters of Am.*, 721 F.2d at 1338; *Intercollegiate Broadcast Sys., Inc.*, 574 F.3d at 756.

HUD's argument against this Court utilizing its discretion appears to rely primarily on the Federal Circuit's decision in *In re DBC*, 545 F.3d 1373 (Fed. Cir. 2008). (*See* HUD Reply at 8–9.) In *DBC*, the Federal Circuit refused to entertain a plaintiff's Appointments Clause challenge to a decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences that had been first raised in a supplemental brief to the Federal Circuit after briefing in the appeal had been completed. 545 F.3d at 1377 n.2, 1381. The Federal Circuit declined to utilize its discretion because 1) the plaintiff's failure to raise the issue earlier was due to a "lack of diligence"; 2) there was no "intervening change in law or facts"; 3) remedial action had been taken whereby the head of the agency reappointed the administrative patent judges at issue pursuant to a new statute and in accordance with the Appointments Clause; and 4) if the court were to remand, there was "nothing to suggest that the [agency] would do anything other than simply . . . assign the case to the same panel" of administrative patent judges who previously heard the case. *Id.* at 1380–81. None of these factors is present here.

First, in light of the circumstances, the Court would not characterize AMB's failure to raise the issue below as demonstrating a complete lack of diligence. AMB's opportunity to raise its Appointments Clause claim before the agency was quite limited. HUD regulations restricted the AJ's review to "whether there is a debt that is past due and whether it is legally enforceable." 24 C.F.R. § 17.69(c); *see also id.* at § 17.73(a). HUD argues that AMB should have raised its Appointments Clause argument via a motion to disqualify the AJ (HUD Mot. at 9), but such a

12

motion would not have yielded reassignment to a lawfully-appointed AJ given that HUD did not appear to have any at that time. (AMB Opp. at 9 n.6, ECF No. 48.) Furthermore, the "timely" challenger in *Lucia* did not raise his Appointments Clause claim before the administrative law judge whose appointment he was challenging; instead, Lucia first raised it on appeal to the SEC. *Lucia*, 138 S. Ct. at 2050, 2055. AMB did not have a similar opportunity to raise the issue in an appeal to HUD, as HUD's regulation provides that "[t]he decision of the administrative judge . . . concerning whether a debt or part of a debt is past due and legally enforceable is the final agency decision." 24 C.F.R. § 17.73(a).

Second, there *has* been a change in law since AMB first litigated before the HUD AJ. At the time the AJ issued her decision on December 16, 2016, the Supreme Court had not yet handed down its decision in *Lucia*. Instead, the binding law of the D.C. Circuit at the time was the panel decision in *Lucia v. SEC*, 832 F.3d 277 (D.C. Cir. 2016), which held that the SEC's administrative law judges were *not* officers within the meaning of the Appointments Clause. *Id.* at 283–89. The Supreme Court reversed the D.C. Circuit opinion in a decision issued on June 21, 2018, more than a year after AMB's case was filed in this Court.

Third, there is no indication that HUD has taken remedial steps since *Lucia* was issued to ensure that all of its AJs are currently lawfully appointed. Instead, HUD only indicates that its Secretary has the statutory authority to appoint AJs—not that the Secretary has done so. (Reply at 12.)[3]

---

[3] AMB argues that the Court should vacate the AJ's decision without remand because "HUD does not yet have any 'properly appointed' AJs . . . and it is not yet entirely clear" that the HUD Secretary currently has the authority from Congress to appoint new AJs. (AMB Opp. at 12–13.) AMB's argument appears to rest on the hypothetical idea that the HUD Secretary might, in the future, attempt to appoint an AJ to hear AMB's case without having received the authority to do so from Congress, or, in the alternative, fail to appoint new AJs despite *Lucia*'s mandate. Both hypothetical scenarios are mere speculation. In *Lucia*, the Supreme Court refused to entertain

13

Finally, if this Court remands the case to HUD, HUD cannot assign it to the same AJ who heard the case before. *Lucia* made clear that where a court remands to an agency for rehearing due to an Appointments Clause violation, a different AJ (or the agency itself) must hold the new hearing. *Lucia*, 138 S. Ct. at 2055.

For these reasons, the Court will utilize its discretion to reach AMB's Appointments Clause claim. Given that the claim is undisputedly meritorious under *Lucia*, the Court grants judgment to AMB on Count III of its Amended Complaint.[4] The Court further grants the *Lucia*-prescribed remedy of vacating the decision of the unconstitutionally appointed AJ and remanding for hearing before a different AJ who has been appointed in accordance with the Appointments Clause of the U.S. Constitution.

## III. COUNT II: APA CLAIM CHALLENGING THE ADMINISTRATIVE JUDGE'S DECISION

In Count II of its Amended Complaint, AMB asserts that the AJ's December 16, 2016 decision is arbitrary, capricious, and contrary to law in violation of the Administrative Procedure

---

the plaintiff's argument that an SEC order "'ratif[ying]' the prior appointments of its ALJs" was invalid, explaining it was speculation to assume that Lucia's case would be heard on remand by "an ALJ whose claim to authority rests on the ratification order." *Lucia*, 138 S. Ct. at 2055 n.6. The Supreme Court explained that "[t]he SEC may decide to conduct Lucia's rehearing itself . . . [o]r it may assign the hearing to an ALJ who has received a constitutional appointment independent of the ratification." *Id*. Following the rationale of *Lucia*, this Court will decline to reach AMB's hypothetical arguments. HUD has pointed to a statute that it believes gives its Secretary authority to appoint inferior officers. (HUD Reply at 12 (citing 42 U.S.C. § 3535(c)).) Perhaps the HUD Secretary will appoint AJs under this statute, or perhaps he will do so pursuant to another statute passed by Congress. Either way, AMB's conjecture regarding how HUD may act in the future does not provide a basis for this Court to decline to remand to the agency at this juncture.

[4] AMB requested that the Court enter judgment on this count in order to preserve AMB's right to seek attorneys' fees associated with this claim. (AMB Opp. at 13.) While it will enter judgment on this claim because it has determined "there is no just reason for delay," Fed. R. Civ. P. 54(b), the Court's action should not be construed as an endorsement of AMB's claim for attorneys' fees.

Act. (Am. Compl. ¶¶ 209–16); *see also* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). Because the Court has ruled that, as a remedy for the Appointments Clause violation articulated in Count III, the AJ's decision is vacated, Count II becomes moot. The now-vacated decision of the AJ no longer presents a "live controversy" fit for judicial review. *Coal. of Airline Pilots Ass'ns v. F.A.A.*, 370 F.3d 1184, 1189 (D.C. Cir. 2004). The Court thus dismisses Count II of the Amended Complaint without prejudice.

IV. **COUNT I: CLAIM ALLEGING VIOLATION OF APA'S NOTICE-AND-COMMENT REQUIREMENTS**

In Count I, AMB asserts a claim based on HUD's failure to employ notice-and-comment rulemaking before implementing its SFLS program. (Am. Compl. ¶¶ 204–08.) AMB urges that it be permitted to continue litigating Count I despite the remand associated with Count III, while HUD urges that the claim be dismissed. (*See* AMB Opp. at 13–16; HUD Mot. at 12–14.) The Court will dismiss Count I because the claim has become moot in light of the vacatur of the AJ's decision.

"Article III, section 2 of the Constitution limits federal court jurisdiction to cases or controversies, meaning that a live controversy must exist at all stages of review." *Coal. of Airline Pilots Ass'ns*, 370 F.3d at 1189 (internal quotation marks omitted). A case becomes moot, and thus a court lacks subject matter jurisdiction, where a "plaintiff no longer has a legally cognizable injury which is traceable to defendants' alleged [conduct]." *Ctr. for Biological Diversity v. Kempthorne*, 498 F. Supp. 2d 293, 296–97 (D.D.C. 2007); *see also Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1207 (D.C. Cir. 1996) ("An issue becomes moot if intervening events leave the parties without 'a legally cognizable interest.'").

15

The only concrete interest that AMB has identified is its owing of money associated with the Loan under the Indemnification Agreement. (AMB Opp. at 20.) That injury is eliminated now that the Court has vacated the AJ's decision holding that such money is due.[5]

Given the vacatur of the AJ's decision, the only remaining grievance that AMB can point to is a procedural one: it was unable to provide comments regarding the SFLS program through notice-and-comment procedures. This is insufficient, for "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient" for purposes of Article III. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (describing the necessary interest required for Article III standing); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (explaining that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)") (citation omitted). The Court thus dismisses Count I of the Amended Complaint as moot.

## CONCLUSION

For the reasons stated above, the Court enters judgment in AMB's favor on Count III. The Court vacates the decision and order of HUD's AJ and remands for a hearing before a different AJ who has been appointed in accordance with the U.S. Constitution's Appointments Clause. The Court dismisses without prejudice Counts I and II of the Amended Complaint as moot. A separate Order accompanies this Memorandum Opinion.

---

[5] AMB's Opposition alludes to a possible harm it may face due to a second indemnified AMB loan sold through the SFLS program (*see* AMB Opp. at 21), but this is insufficient to alter the conclusion that AMB's notice-and-comment claim is now moot. The case regarding this second AMB loan is currently pending before a HUD AJ. (*Id.*) Since the AJ has not yet ruled regarding AMB's possible debt for this second loan, the Court cannot conclude that AMB has suffered any injury associated with this second loan's inclusion in the SFLS program.


ELLEN S. HUVELLE
United States District Judge

Date: January 4, 2019